Virgil R. McCOY, Appellant,

v.

LIBERTY FOUNDRY COMPANY, et al., Respondent.

No. 42743.

Missouri Court of Appeals, Eastern District, Division Three.

April 20, 1982.

Michael A. Gross, St. Louis, for appellant.

Ralph Kleinschmidt, Gerre S. Langton, Robert E. Keaney, Mary Case, St. Louis, for respondent.

CRIST, Judge.

The question is whether plaintiff's First Amended Petition states tort claims against his corporate employer and its officers and directors that are not barred by the Workers' Compensation Law's exclusivity provisions, § 287.120.–1 & 2, RSMo. 1978:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.

\*    \*    \*    \*    \*    \*

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

The trial court's answer was negative, and plaintiff appeals from the order dismissing his petition for failure to state a claim upon which relief can be granted. We affirm.

The petition has four counts. Counts One and Two are against the employer Liberty Foundry Company (Liberty), a Missouri corporation that operates a steel foundry in St. Louis. Counts Three and Four are against Liberty's officers and directors (individual defendants).

Count One alleges plaintiff's employment by Liberty as a "grinder" from 1965 through 1979, when he learned he had contracted silicosis. The substance of plaintiff's claim in Count One is that "Liberty intentionally ... failed" both to comply with statutory provisions for employee health and safety, see, e.g., Chapter 292, RSMo.1978, and to implement readily available safety measures and devices, and that the foundry was maintained "in a dangerous manner with inadequate ventilation, hazardous accumulations of poisonous and noxious substances, faulty and improper equipment, machinery, and facilities, and no monitoring of employees for the symptoms and onset of occupational disease." Further: "[t]he injury of Plaintiff ... was the

natural and foreseeable consequence of the intentional acts and omissions of Liberty [mentioned above] and was intended by Liberty."

Count Two repeats Count One, except in lieu of the allegation that plaintiff's injury "was intended by Liberty" is one that "Liberty knew or had reason to know that there was a strong probability that such injury would occur to some or all of its employees, including Plaintiff, as a result of such acts and omissions."

Counts Three and Four against Liberty's officers and directors restate the substance of Counts One and Two, respectively, except that the alleged acts of the individual defendants are that they "intentionally caused Liberty to do" what Liberty allegedly did in Counts One and Two.

Plaintiff's claim of contracting silicosis as a result of his working conditions at Liberty strongly suggests (to say the least) an occupational disease, hence a compensable "injury" under the Workers' Compensation Law as the result of an "accident," see: *Staples v. A. P. Green Fire Brick Company*, 307 S.W.2d 457, 462 (Mo. banc 1957); *Dayton v. Boeing Company*, 389 F.Supp. 433, 435–36 (D.Mont.1975) (applying Missouri Law), for which a Workers' Compensation Law award is the exclusive remedy. Plaintiff contends, however, his injury was nonaccidental and therefore not within the exclusivity provisions of § 287.120, RSMo.1978 set out earlier, because his injury resulted from the defendants' intentional acts. Plaintiff's purpose is to avoid the Workers' Compensation Law by stating a claim under a narrow exception to its exclusivity provisions, one that imposes common law tort liability on an employer for intentionally inflicting injury on an employee.

■ Plaintiff based his petition on the principles summarized at 2A A. Larsen, *Workmen's Compensation* § 68, at 13–1 (1976) (hereafter cited as Larsen):

Intentional injury inflicted by the employer in person on his employee may be made the subject of a common-law action for damages on the theory that, in such an action, the employer will not be heard to say that his intentional act was an "accidental" injury and so under the exclusive provisions of the compensation act. The same result may follow when the employer is a corporation and the assailant is, by virtue of control or ownership, in effect the alter ego of the corporation. * * *

*And see*: Annot., 96 A.L.R.3d 1064, 1071 (1979). The employer's intentional act that may result in an actionable nonaccidental injury is further explained at Larsen, *supra* § 68.13 at 13–9:

[W]hat is being tested is ... the narrow issue of intentional versus accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was the deliberate infliction of harm comparable to an intentional left jab to the chin.

Thus, for employer conduct to be actionable as a "nonaccidental" cause of injury, the employer must intentionally act with the specific purpose of thereby injuring the employee.

■ Claims of the kind plaintiff tries to make here arise from the nature of the employer's conduct rather than the nature of the employee's injury, and it is still an open question whether they are cognizable under our law. *See: Gambrell v. Kan. City Chiefs Football Club*, 562 S.W.2d 163, 168 (Mo.App.1978); *Leicht v. Venture Stores, Inc.*, 562 S.W.2d 401, 402 (Mo.App.1978). Assuming they are, the foremost deficiency in Counts One and Two is the absence of facts showing Liberty acted with the specific purpose of injuring plaintiff. We are mindful that plaintiff alleged his injury "was intended by Liberty." We are mindful, too, that in determining the sufficiency of a petition challenged by a motion to dismiss, we are to give the petition its broadest intendment, treat all facts alleged as true, and construe the allegations favor-

ably to the plaintiff to determine whether they invoke principles of substantive law. *Porter v. Crawford & Co.,* 611 S.W.2d 265, 266 (Mo.App.1980). But the resulting interpretation of the petition must be reasonable and fair, *id.,* and one that fairly appears to have been intended by the pleader. *King v. Guy,* 297 S.W.2d 617, 624 (Mo.App.1956). The petition does not directly allege or imply, nor can it reasonably be inferred, that Liberty did what it is alleged to have done throughout the fourteen years of plaintiff's employment for the fiendish purpose of infecting plaintiff and eventually disabling him with silicosis. Plaintiff's injury may have been a "natural and foreseeable consequence" of Liberty's conduct, as alleged in Count One, and even a "strong probability," as alleged in Count Two. But there is no allegation of that deliberate infliction of harm required under the principles explained by Larsen, *supra.* Counts One and Two were properly dismissed.

Counts Three and Four were properly dismissed because neither alleges actionable conduct. The substantive allegations in both counts are that the individual defendants "intentionally caused Liberty['s]" failures and shortcomings alleged earlier in Count One. No other conduct is alleged. A review of Liberty's conduct alleged in Count One shows that the gist of these latter two counts against the individual defendants is that they somehow "caused" an unsafe place for plaintiff to work. That they did so "intentionally" or "maliciously," or any other general averment of a state of mind, Rule 55.15, adds nothing by way of conduct to the petition because the averments are conclusory and to be disregarded when, as here, they are not supported by the petition's allegations of fact. See: *Pillow v. General American Life Ins. Co.,* 564 S.W.2d 276, 281 (Mo.App.1978).

In *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175 (Mo.App. banc 1982), we held it is the employer's duty to provide a reasonably safe place to work, and a supervisory employee to whom that duty has been "delegated" may be liable to third persons, including subordinate co-employees, for mis-

feasance of that duty but not for its nonfeasance as alleged therein. A supervisory "employee" includes executive officers of corporations. *Id.,* at 177; § 287.020, RSMo. 1978. If plaintiff's charge is that the individual defendants "caused" the unsafe workplace by their nonfeasance, he has not charged actionable conduct as a matter of law. If plaintiff intended to charge misfeasance, he has not met even the threshold requirement of alleging some affirmative act by his supervisory co-employees that caused or increased the risk of his injury—the "something 'extra' . . . required beyond a breach of [their] duty of general supervision and safety" to which we alluded in Badami, *supra,* at 179. Neither Count Three nor Count Four states an actionable claim against the individual defendants, and were properly dismissed.

The order dismissing plaintiff's First Amended Petition is affirmed.

REINHARD, P. J., and SNYDER, J., concur.