John R. CRAFT, Appellant,

v.

Thomas S. SCAMAN, Respondent.

No. 49800.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 25, 1986.

Motion for Rehearing and/or Transfer
Denied March 25, 1986.

Case Transferred to Supreme Court
May 13, 1986.

Case Retransferred to Court of Appeals
Sept. 25, 1986.

Original Opinion Reinstated Sept. 26, 1986.

Frank B. Green, Jack Randall, Inc., St. Louis, for appellant.

Richard B. Dempsey, Union, for respondent.

GARY M. GAERTNER, Judge.

In his petition, plaintiff alleged that on September 20, 1978, defendant negligently applied friction to a reel of highly flamma-

ble fuse, thereby causing a flash fire that injured plaintiff. Defendant filed a counterclaim, and also filed a motion to dismiss plaintiff's petition, arguing that the trial court lacked subject-matter jurisdiction. The trial court denied the motion to dismiss, and the case proceeded to a jury trial. The jury returned verdicts in favor of plaintiff on the original claim and on the counterclaim, assessing his damages at $75,-000.00. On defendant's motion, alleging several errors in the jury instructions, the trial court issued an order granting a new trial. Plaintiff appeals from that order. We reverse.

In reviewing the trial court's decision to grant a new trial, we consider the evidence in a light most favorable to the plaintiff, together with all inferences reasonably deducible therefrom. *Farley v. Johnny Londoff Chevrolet, Inc.*, 673 S.W.2d 800, 803 (Mo.App.1984); *Fancher v. Southwest Missouri Truck Center, Inc.*, 618 S.W.2d 271, 272 (Mo.App.1981).

On the date of the accident, plaintiff was employed at a fireworks factory owned by Apollo of the Ozarks, Inc., a Missouri corporation. Defendant has been the corporation's president since the corporation was formed thirteen years ago. Defendant and his wife are the corporation's only shareholders. Defendant's duties as president include selling merchandise, creating good will, supervising operations at the factory, and some clerical work.

The corporation manufactures both fireworks and fuse, all of which are class C explosives.[1] Part of plaintiff's duties at the factory required him to fill customers' orders for fuse. In performing this task, plaintiff operated an electrically-powered machine that transferred the fuse from a large spool on which the fuse was stored to another spool on which the fuse was shipped to customers. Plaintiff controlled the speed at which the fuse was wound from one spool onto the other by means of a foot pedal which was connected to the machine's electrical motor.

1. *See* § 320.106(2) RSMo Supp.1985.

On September 20, 1978, plaintiff was operating the machine that transfers the fuse, when a flange on one of the spools separated from the spool's cylinder. The spool remained on its axle, but bounced up and down when it was rotated. Plaintiff located the defendant elsewhere in the factory and directed him to the machine. After examining the machine, defendant found an eight-foot long board and used it as a lever to prop up the broken spool. In this position the board rested against the fuse. Defendant then instructed plaintiff to go ahead and run the machine. Plaintiff began operating the machine at a slow speed, whereupon defendant told him to "speed it up." Plaintiff did so, and within a few seconds a flash fire erupted, engulfing the plaintiff in flames.

Plaintiff brought this action to recover for bodily injuries he suffered as a result of the fire. Defendant counterclaimed for injuries he received in the same fire. Defendant also filed a motion to dismiss plaintiff's petition, arguing that payments made by defendant to plaintiff under the Missouri Workmen's Compensation Law deprived the trial court of subject-matter jurisdiction. The court denied this motion, and the case proceeded to a jury trial. At the close of all the evidence, plaintiff's case against defendant was submitted to the jury as Instruction No. 8:

> Your verdict must be for plaintiff and you must assess a percentage of fault to defendant if you believe:
>
> First, defendant ignited the spool of fuse by placing a board against the fuse while plaintiff was rewinding it on to another spool, and
>
> Second, before placing the board against the fuse defendant knew or in the exercise of ordinary care could have known that the fuse was highly flammable and explosive and that if ignited was reasonably likely to injure plaintiff, and
>
> Third, defendant, in the respects submitted in paragraphs First and Second was thereby negligent, and
>
> Fourth, as a direct result of such negligence, plaintiff sustained damage.

Plaintiff's defense to defendant's counterclaim was submitted to the jury as Instruction No. 13:

> You must assess a percentage of fault to defendant if you believe:
>
> First, defendant ignited the spool of fuse by placing a board against the fuse while plaintiff was rewinding it on to another spool, and
>
> Second, before placing the board against the fuse defendant knew or in the exercise of ordinary care could have known that the fuse was highly flammable and explosive and that if ignited was reasonably likely to injure defendant, and
>
> Third, defendant, in the respects submitted in paragraphs First and Second was thereby negligent, and
>
> Fourth, such negligence of defendant directly caused or directly contributed to cause any damage defendant may have sustained.

The jury returned verdicts in favor of plaintiff on his claim and against defendant on his counterclaim. The jury assessed plaintiff's damages at $75,000.00. Defendant then filed a motion for a new trial, alleging error in the jury instructions on four grounds. The trial court granted defendant's motion, assigning error on each of the asserted grounds. We reverse the grant of a new trial, holding that error was not properly assigned on any ground.

■ The general rule provides that an appellate court will be more liberal in upholding a trial court's decision to grant a new trial than it will be if the trial court denies a new trial. *Large v. Carr,* 670 S.W.2d 71, 72 (Mo.App.1984). However, a trial court's authority to grant a new trial is discretionary only as to questions of fact, not matters of law. *Harrell v. Knight,* 679 S.W.2d 432, 433 (Mo.App.1984). Instructional error involves a question of law; therefore, if a new trial has been granted for such error the appellate court must examine the record presented to determine whether the challenged instructions were

erroneous and, if so, whether such instructions prejudiced respondent. *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 449 (Mo.banc 1980). In recent years, Missouri courts have been reluctant to reverse a judgment for instructional error unless there is a substantial indication of prejudice. *Lawton v. Jewish Hospital of St. Louis,* 679 S.W.2d 370, 375 (Mo.App.1984). If the trial court orders a new trial on several grounds, its order will be upheld on appeal if any one of those grounds is valid. *Kuzuf, supra* at 449.

Each of the four errors alleged by defendant in his motion for a new trial derived from Instructions Nos. 8 and 13, as set forth above. In his first two allegations of error, defendant alleged that paragraph "Second" of each instruction improperly hypothesized defendant's knowledge in terms of what defendant "knew or in the exercise of ordinary care *could* have known." (Emphasis added.) Defendant argued that the instructions should have hypothesized defendant's knowledge in terms of what he "should" or "would" have known in the exercise of ordinary care. In granting a new trial on these grounds, the trial court explained that the word "could" "expresses mere possibility," whereas the word "should" "denotes duty." The court thus concluded that "should have known" was the proper standard, and that using the "could have known" standard unfairly prejudiced defendant.

■ We cannot agree that inclusion of the "could have known" standard was either erroneous or prejudicial. With regard to both the claim and the counterclaim, plaintiff and defendant each admitted they were aware that applying friction to the fuse would cause it to ignite. The only

issues contested at trial were factual issues as to what each party said and did immediately prior to the fire.[2] Given that both parties admitted having knowledge of the danger, the jury was only required to find that defendant ignited the fuse by placing the board against it, and that the resulting fire injured plaintiff. Defendant's knowledge was, therefore, a "non-issue," and paragraph "Second" of Instructions Nos. 8 and 13 was wholly unnecessary. *Cline v. Carthage Crushed Limestone Co.,* 504 S.W.2d 102, 111 (Mo.1973); *Husar Industries, Inc. v. A.L. Huber & Son, Inc.,* 674 S.W.2d 565, 574 (Mo.App.1984).

Defendant apparently recognized that knowledge of the danger was undisputed, because his verdict-directing instruction did not contain any element of scienter.[3] At the instructions conference, moreover, defendant specifically objected to Instructions Nos. 8 and 13 on the ground that scienter "is not a proper element, *or necessary element,* in a matter such as this." (Emphasis added.) We also observe that if a person *does* know of a particular danger, then he necessarily *could* have known and *should* have known, in the exercise of ordinary care, of that danger. *Dorrin v. Union Electric Co.,* 581 S.W.2d 852, 859–60 (Mo.App.1979). Accordingly, we hold that defendant was not prejudiced by the superfluous submission of the "could have known" standard, and that the trial court thus erred in granting a new trial on the first two grounds asserted by defendant.

Defendant's third argument supporting his motion for a new trial provided that paragraph Second of Instructions Nos. 8 and 13 was improper because it failed to hypothesize that defendant knew that placing the board against the rotating fuse would cause it to ignite and injure plaintiff. Instead, the instructions only hypothesized

---

2. Defendant testified at trial that in holding the board against the fuse he was merely following instructions given to him by plaintiff and another employee.

3. Defendant's verdict-director provided:
   Your verdict must be for defendant Tom Scaman and you must assess a percentage of fault to plaintiff John Craft if you believe:

First, plaintiff operated the winding machine so as to create friction on the fuse reel which ignited the fuse, and
   Second, plaintiff was thereby negligent, and
   Third, as a direct result of such negligence, defendant Tom Scaman sustained damage.

that defendant knew "that the fuse was highly flammable and explosive and that if ignited was reasonably likely to injure [plaintiff or defendant]." Defendant argued that the instructions improperly allowed the jury to find defendant negligent without finding that defendant knew his allegedly negligent act was likely to cause injury. The trial court granted a new trial on this ground.

█ Our previous discussion disposes of this alleged instructional error. As we have stated, neither party disputed his knowledge of the consequences likely to result from placing the board against the rotating fuse. Scienter, therefore, was not a necessary element in the jury instructions. Hence, the failure to hypothesize defendant's knowledge of the consequences of his negligent acts was neither erroneous nor prejudicial.

Defendant's final argument supporting his motion for a new trial provided that "Instructions Nos. 8 and 13 [were] fatally defective because there [was] no evidence adduced that plaintiff knew, in the exercise of ordinary care, that his action of placing the board against the fuse would cause it to ignite." Again, we have determined above that this issue was treated at trial as an undisputed matter of fact. Accordingly, we find that the trial court improperly granted a new trial on this ground.

Having found each of the four instructional errors alleged by defendant to be without merit, we hold that the trial court erred in granting a new trial. Defendant argues, however, that the jury verdict should nevertheless be overturned because the trial court erred in denying defendant's motion to dismiss for lack of subject-matter jurisdiction. In his motion, defendant stated that he had already paid plaintiff for his injuries under the Workmen's Compensa-

tion Law, chapter 287 RSMo 1978, thereby depriving the trial court of jurisdiction.

This court has held that the primary and proper means of raising the Workmen's Compensation Law as a defense to a common law tort action is by a motion to dismiss for lack of subject-matter jurisdiction. *Parmer v. Bean*, 636 S.W.2d 691, 695 (Mo.App.1982). The trial court must dismiss the action whenever it "appears" that it lacks subject-matter jurisdiction. Rule 55.27(g)(3). The movant thus bears the burden of proving by a preponderance of the evidence that the court lacks jurisdiction. *Zahn v. Associated Dry Goods Corp.*, 655 S.W.2d 769, 772 (Mo.App.1983).

Section 287.120 RSMo 1978 provides that, when an employee's claim against an employer is cognizable under the Workmen's Compensation Law, that law provides the employee's exclusive remedy.[4] An employer's liability for compensation under the Workmen's Compensation Law thus releases the employer from all other liability. *State ex rel. McDonnell Douglas Corp. v. Luten*, 679 S.W.2d 278, 279 (Mo. banc 1984). If the employer, the employee and the accident fall within the purview of the Workmen's Compensation Law, then exclusive and original jurisdiction vests in the Labor and Industrial Relations Commission. *Parmer, supra* at 693.

Neither party disputes that plaintiff suffered an "accident" within the meaning of the Workmen's Compensation Law, § 287.020.2 RSMo 1978, nor is it disputed that plaintiff is an "employee" under that law, § 287.020.1 RSMo 1978. If, therefore, defendant is plaintiff's "employer" under the Workmen's Compensation Law, then the trial court had no jurisdiction over plaintiff's common law tort action against defendant. Plaintiff contends, however, that

4. Section 287.120 provides, in pertinent part:
1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other

liability therefor whatsoever, whether to the employee or any other person....
2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

defendant was acting as a co-employee, not an employer, when he negligently injured plaintiff.

Section 287.150 RSMo 1978 provides that "[w]here a third person is liable to the employee ... for the injury ... the employer shall be subrogated to the right of the employee ... against such third person...." Missouri courts have consistently held that a co-employee is a "third person" within the meaning of § 287.150, and that he may be sued by an injured co-employee if his negligence causes a compensable accident. *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 177 (Mo.App. banc 1982). In *Badami*, this court considered whether a corporate officer may be held personally liable as a co-employee for compensable injuries sustained by a fellow employee. The court recognized that the Workmen's Compensation Law defined "employee" to include executive officers of corporations, § 287.020.1 RSMo 1978, but observed that the Missouri courts had yet to consider the scope of a corporate officer's liability as a co-employee.

After exhaustively canvassing the law on this issue in other jurisdictions, the *Badami* court adopted the "Wisconsin approach":

> There it is held that a corporate officer or supervisory employee performs in a dual capacity. He has immunity under the workmen's compensation law where his negligence is based upon a general non-delegable duty of the employer; he does not have immunity where he does an affirmative act causing or increasing the risk of injury. Something "extra" is required beyond a breach of his duty of general supervision and safety, for that duty is owed to the employer, not the employee.

*Id.* at 179, *citing Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973) (*Kruse I*); *Kruse v. Schieve*, 72 Wis.2d 126, 240 N.W.2d 159 (1976) (*Kruse II*); *Laffin v.*

*Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51 (1977). The plaintiff in *Badami* based his negligence claim against the defendants—the corporate president and a production manager—solely upon their failure to provide him with a reasonably safe place to work. The court thus granted defendants immunity under the Workmen's Compensation Law, without further explaining the "something extra" necessary to impose liability upon a corporate officer: "The extent and nature of the additional charge can only be determined and sorted out on a case-by-case basis." *Badami, supra* at 180–81.

Only one subsequent Missouri decision has attempted to define the parameters of this "additional charge." In *Rhodes v. Rogers*, 675 S.W.2d 107 (Mo.App.1984), the Southern District of our Court of Appeals held that a corporate officer or supervisory employee is liable for a fellow employee's injuries only if he "intentionally acted with the specific purpose of injuring [the fellow employee]." *Id.* at 108, *citing McCoy v. Liberty Foundry Co.*, 635 S.W.2d 60, 62 (Mo.App.1982). Absent such intentional conduct, the corporate officer or supervisory employee remains shielded by the employer's immunity.

Our own analysis of the "Wisconsin approach" adopted in *Badami* leads us to the inescapable conclusion that the *Rhodes* court misinterpreted that approach. In deciding that an intentional act was the "something extra" required to take a claim against a corporate officer outside the Workmen's Compensation Law, the *Rhodes* court relied principally upon this court's decision in *McCoy, supra*. The *McCoy* court applied the "intentional act" rule, however, in the context of a claim against corporate officers acting in their capacities *as employers*.[5] Plaintiff in that case did not claim that the officers were acting as *co-employees* when plaintiff sustained inju-

**5.** The *McCoy* court characterized plaintiff's claim as follows:

> Plaintiff's purpose is to avoid the Workers' Compensation Law by stating a claim under a narrow exception to its exclusivity provisions,

one that imposes common law tort liability on an *employer* for intentionally inflicting injury on an employee.

*Id.* at 62 (emphasis added).

ry. The *Rhodes* court thus extended the "intentional act" rule to cover co-employee liability as well as employer liability. An analysis of the Wisconsin cases relied upon in *Badami* indicates that such extension was unwarranted.

In *Kruse I, supra,* wherein the "something extra" language originated, the court reviewed several previous cases in which co-employee liability was imposed upon corporate officers. For example, in *Hoeverman v. Feldman,* 220 Wis. 557, 265 N.W. 580 (1936), a corporate president was held liable for carelessly directing the plaintiff employee to operate a machine in a particular manner; in *Wasley v. Kosmatka,* 50 Wis.2d 738, 184 N.W.2d 821 (1971), a corporate officer negligently operated a boom truck which caused the employee's death; and in *Pitrowski v. Taylor,* 55 Wis.2d 615, 201 N.W.2d 52 (1972), the accident occurred while the company president was assisting an employee in loading a truck.

These cases clearly do not require, as a predicate to a corporate officer's co-employee liability, that the officer has acted intentionally to injure his fellow employee. In *Laffin, supra,* the court explained:

> It is when the officer or supervisor doffs the cap of officer or supervisor and dons the cap of a coemployee that he may be personally liable for injuries caused. If the officer or supervisor is to be personally liable it is because of some affirmative act of the officer or supervisor which increased the risk of injury to the employee. If a corporate officer or supervisor engages in this affirmative act, he owes the involved employee a duty to exercise ordinary care under the circumstances. This duty is over and beyond the duty of proper supervision owed to the employer. It is the duty one employee owes another.

*Id.* 253 N.W.2d at 53. *See also Gerger v. Campbell,* 98 Wis.2d 282, 297 N.W.2d 183, 186 (1980) ("[I]t is only when an officer or supervisor breaches a personal duty, as contrasted to a breach of duty owed primarily to the employer, that the policy of the worker's compensation act permits a recovery from the officer or supervisor as the third-party defendant."). In *Athas v. Hill,* 300 Md. 133, 476 A.2d 710 (1984), the Maryland court explained:

> Under the Wisconsin approach, a corporate officer or supervisory coemployee is subject to liability for negligence if he breaches a duty of care which he personally owed to the plaintiff. The negligence must have been directed toward the particular plaintiff and the tortious act must have been outside the scope of the employer's responsibility. The coemployee is not liable merely for breaching a duty that the employer owed the injured employee.

*Id.* 476 A.2d at 715. *See also Clark v. Better Construction Co., Inc.,* 420 So.2d 929, 931 (Fla.App.1982); *Greco v. Farago,* 477 A.2d 98, 100 (R.I.1984). *See generally* 2A Larson, *Workmen's Compensation,* § 72.13 (1983).

We thus hold that the "something extra" required to impose tort liability upon a corporate officer includes any affirmative act, taken while the officer is acting outside the scope of the employer's responsibility, that breaches a personal duty of care the officer owes to a fellow employee. In the instant case, the averments in plaintiff's petition indicated that defendant's affirmative act had caused or increased the risk of the plaintiff's injury. Plaintiff alleged that "defendant negligently and carelessly applied friction to the spinning reel of fuse," thereby causing the fire that injured plaintiff. This act did not involve any general, non-delegable duty of the employer, such as the duty to provide a reasonably safe place to work. Rather, defendant breached his common law duty to exercise reasonable care in handling the fuse.[6] This was a duty owed by one employee to another. When defendant assisted plaintiff in attempting to fix the broken machine, he had indisputably doffed his supervisory cap and donned the cap of a

---

6. *See Custom Craft Tile, Inc. v. Engineered Lubricants Co.,* 664 S.W.2d 556, 558 (Mo.App.1983) ("The common law imposes a duty upon those controlling dangerous materials to exercise that degree of care commensurate with the risk of danger inherent in the material involved.").

co-employee. Given these circumstances, defendant was a "third person" under the Workmen's Compensation Law, and was not, therefore, entitled to immunity from plaintiff's common law tort action.

One final problem confronts us. In his treatise on the law of workmen's compensation, Professor Larson posits that if a "defendant so dominates the corporation, perhaps as stockholder, president, and manager, that he can honestly be said to be the alter ego of the corporation, this in itself may suffice to bar any action against him." Larson, *supra* at § 72.13, p. 14–65. In the instant case, defendant is president and a principal shareholder in the corporation for which plaintiff was working when he was injured. Defendant also performed various managerial and administrative functions relating to the fireworks manufacturing operation. Defendant would thus appear to qualify as the corporation's "alter ego."

■ We cannot agree, however, with Larson's above-quoted proposition. First, the cases he cites in support thereof do not compel the conclusion that an alter ego should never be subject to tort liability as a co-employee.[7] Each of the cited cases involved an accident that occurred while the defendant corporate officer was performing non-delegable duties of the employer; none of the defendants even appeared to have assumed the status of a co-employee. Other courts have found an alter ego liable in tort if he has breached a personal duty of care owed to a fellow employee. *See, e.g., Chorak v. Naughton,* 409 So.2d 35, 38 (Fla.App.1982) (corporation's president and director, who also acted as a dealer, general manager and salesman, was personally liable for injuries caused when he "paddled" one of his fellow salesmen, even though the corporation—which bore his name—had immunity).[8] We can, moreover, discern no logical or practical reason for granting immunity to an alter ego but not to an officer less intimately associated with the corporation. The plaintiff's injury and his need for compensation remain unaffected by defendant's status as the corporation's alter ego. We thus reject any contention that defendant is immune from suit because he is the alter ego of Apollo of the Ozarks, Inc.

Having concluded that defendant, as a co-employee, was amenable to a common law tort action by plaintiff, we hold that the trial court properly denied defendant's motion to dismiss plaintiff's claim for lack of subject-matter jurisdiction. The case is thus remanded to the trial court with instructions to reinstate the verdict entered by the jury.

Reversed and remanded.

KAROHL, P.J., and SIMON, J., concur.

---

7. Larson cites *Neal v. Oliver,* 246 Ark. 377, 438 S.W.2d 313 (1969); *McClendon v. Security Insurance Co. of Hartford,* 340 So.2d 426 (La.App. 1976); and *Stoker v. Wood,* 161 Ga.App. 110, 289 S.E.2d 265 (1982).

8. *See generally* Annot., 30 A.L.R.4th 948, 952 (1984).