Thomas SPECK and Linda Walters,
Plaintiffs–Appellants,

v.

UNION ELECTRIC COMPANY,
Defendant–Respondent.

No. 50412.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 17, 1987.

Rehearing Denied Dec. 22, 1987.

James E. Hullverson, Jr., St. Louis, for plaintiffs-appellants.

James J. Virtel, Ann E. Buckley, St. Louis, for defendant-respondent.

PER CURIAM:

Plaintiffs appeal from an order dismissing without prejudice Count III of their amended petition against defendant Union Electric Company. We reverse and remand.

Plaintiffs Thomas Speck and Linda Walters are the children of Stephen Speck, now deceased. Stephen Speck originally filed suit against various companies that had supplied Union Electric with asbestos insulation products. After their father's death, plaintiffs filed a three-count amended petition against the original defendants and Union Electric, naming Union Electric as a defendant only in Count III. The first count reiterated claims against the insulation suppliers based on various products liability theories that Stephen Speck raised in his suit. Count I contained averments that those defendants had "sold, furnished and supplied" defective and unreasonably dangerous insulation products containing asbestos to Union Electric. It was further alleged that Stephen Speck was employed by Union Electric as a "helper in the steam department" from 1947 until March 1984, during which time he was exposed, through his employment, to asbestos from insulation covering pipes owned, operated, or maintained by Union Electric. Plaintiffs asserted that, as a direct result of this asbestos exposure, Stephen Speck contract-

ed mesothelioma and "other related asbestos diseases afflicting his respiratory-cardiovascular system."

In Count II plaintiffs Thomas Speck and Linda Walters incorporated Count I by reference and alleged that Stephen Speck died on December 25, 1984, as a direct result of the mesothelioma he contracted due to the tortious conduct mentioned in Count I. They alleged that they were the only children of Stephen Speck, who was unmarried at the time of his death, and the proper parties to bring a wrongful death action under § 537.080, RSMo 1978.

In Count III plaintiffs set forth a wrongful death claim against Union Electric and incorporated by reference the first two counts. Plaintiffs alleged in Count III:

> Throughout the time of Stephen Speck's employment with Union [Electric] Company during which he was exposed to asbestos-containing products and materials, and was required by Union Electric Company to work with such products and materials, the Union Electric Company did deliberately and intentionally fail to warn Stephen Speck about the dangers associated with asbestos, did deliberately and intentionally withhold information regarding the health of Stephen Speck, and did deliberately and intentionally order Stephen Speck to work with deleterious materials, to wit asbestos insulation, and thereby committed an assault and battery against Stephen Speck.

Plaintiffs also asserted that the alleged conduct of Union Electric was not an ordinary incident of Stephen Speck's work and, therefore, The Missouri Workers' Compensation Law, ch. 287, RSMo 1978, did not provide the exclusive remedy for their claim.

Union Electric filed a motion to dismiss Count III, asserting that plaintiffs' claim was barred because the workers' compensation statute provided their exclusive remedy. The court granted Union Electric's motion and dismissed Count III without prejudice and designated its order final for purposes of appeal pursuant to Rule 81.06.

We initially transferred this case to the supreme court for determination of the appealability of the order dismissing Count III. The supreme court held that the order of dismissal was appealable and remanded the case to us for resolution on the merits. *Speck v. Union Electric Co.,* 731 S.W.2d 16 (Mo. banc 1987).

In plaintiffs' sole point on appeal they allege:

> The trial court erred in sustaining Union Electric's motion to dismiss, because the petition alleges a deliberate and intentional wrongdoing by Union Electric in exposing Stephen Speck to asbestos without informing him of its risks and concealing his health status after his exposure to asbestos and this deliberate intentional withholding of information constitutes a non-accidental event for which the employer is not shielded by the exclusivity clause of the workers compensation law.

In dismissing Count III, the trial court apparently relied on § 287.120, RSMo 1978,[1] and *McCoy v. Liberty Foundry Co.,* 635 S.W.2d 60 (Mo.App.1982). In *McCoy,* the plaintiff contended that he contracted silicosis as a result of Liberty's intentional acts and that the injury was intended by Liberty. Noting that the plaintiff attempted to state a claim "under a narrow exception to [the] exclusivity provisions [of The Missouri Workers' Compensation Law], one that imposes common law tort liability on

---

1. Section 287.120 provides:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

an employer for intentionally inflicting injury on an employee[,]" we examined the scope of that exception and quoted extensively from 2A A. Larson, *The Law of Workmen's Compensation* § 68 (1976) as follows:

> Intentional injury inflicted by the employer in person on his employee may be made the subject of a common-law action for damages on the theory that, in such an action, the employer will not be heard to say that his intentional act was an "accidental" injury and so under the exclusive provisions of the compensation act. The same result may follow when the employer is a corporation and the assailant is, by virtue of control or ownership, in effect the alter ego of the corporation. * * *
> ....
> [W]hat is being tested is ... the narrow issue of intentional versus accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was the deliberate infliction of harm comparable to an intentional left jab to the chin.

*McCoy*, 635 S.W.2d at 62.

Relying principally on *Larson*, we held: "[F]or employer conduct to be actionable as a 'nonaccidental' cause of injury, *the employer must intentionally act with the specific purpose of thereby injuring the employee.*" *Id.* (emphasis added). We determined that the court did not err in dismissing plaintiff's petition and stated:

> The petition does not directly allege or imply, nor can it reasonably be inferred, that Liberty did what it is alleged to have done throughout the fourteen years of plaintiff's employment for the fiendish purpose of infecting plaintiff and eventually disabling him with silicosis. Plaintiff's injury may have been a "natural and foreseeable consequence" of Liberty's conduct, as alleged in Count One, and even a "strong probability," as alleged in Count Two. But there is no allegation of that deliberate infliction of harm required under the principles explained by Larson, *supra*.

*McCoy*, 635 S.W.2d at 63. There are similarities between the case at bar and *McCoy*. Under the *McCoy* standard, plaintiffs have not stated a cause of action.

On appeal plaintiffs do not make a serious attempt to distinguish *McCoy;* rather, they attack the reasoning and soundness of that decision, contending that it conflicts with *Harryman v. L & N Buick–Pontiac, Inc.*, 431 S.W.2d 193 (Mo. banc 1968), and cases from other jurisdictions. When we initially transferred this case, we anticipated that the supreme court would examine their complaints, especially the contention of a conflict between *McCoy* and *Harryman;* however, it declined to do so.

At the time of our opinion in *McCoy*, few cases involving asbestos-related injuries had been decided by appellate courts. *McCoy* itself, while involving an "occupational disease," did not address the growing problem of asbestos-induced injuries in the workplace. In *McCoy*, we reached our conclusion by relying on Larson's treatise without citing any cases that considered the definition of "intent." Since *McCoy*, there has emerged a body of cases addressing the issue with which we now are faced; most of those cases have been decided by the highest appellate courts of the respective states.

Plaintiffs correctly point out that some other jurisdictions that have considered the issue after *McCoy* have adopted less narrow definitions of the intent required to make an injury "non-accidental" and, therefore, cognizable despite the exclusivity provision of workers' compensation statutes. *See, e.g., Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 501 A.2d 505 (1985); *Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984); *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357 (E.D.Penn.1982). Defendant, on the other hand, cites several cases from other jurisdictions which follow a "specific purpose" test purportedly like that of *McCoy*. *See, e.g., Noonan v. Spring*

*Creek Forest Products, Inc.,* 700 P.2d 623 (Mont.1985); *Hildebrandt v. Whirlpool Corp.,* 364 N.W.2d 394 (Minn.1985); and *Sanford v. Presto Manufacturing Co.,* 92 N.M. 746, 594 P.2d 1202 (1979).

We have carefully examined the cases arising since *McCoy* and are favorably impressed with *Millison,* 101 N.J. 161, 501 A.2d 505. The plaintiffs in that case "charge[d] the employer and [company] physicians with intentionally exposing the employees to asbestos in the workplace, deliberately concealing from employees the risks of exposure to asbestos, and fraudulently concealing specific medical information obtained during employee physical examinations...." 501 A.2d at 507. In a well-reasoned and balanced opinion, the New Jersey Supreme Court utilized Professor Keeton and the late Dean Prosser's "intent" analysis and the *Restatement (Second) of Torts* § 8A (1965) which the court paraphrased to state that "intent" means that the "actor desires to cause [the] consequences of his act *or is substantially certain that such consequences will result from his action.*" 501 A.2d at 514 (emphasis added). The court adopted a "substantial certainty" standard by which to determine the intent necessary to satisfy the "intentional wrong" exception in the New Jersey workers' compensation act. Applying that standard, the court held that "although the employees are limited to workers' compensation benefits for any initial occupational-disease disabilities related to the hazards of their employment experience, the Compensation Act does not bar plaintiffs' cause of action for aggravation of those illnesses resulting from defendants' fraudulent concealment of already-discovered disabilities." *Id.* at 507.

▪ We conclude that the "specific purpose" test as stated in *McCoy* varies little from the *Millison* "substantial certainty" test. We believe that when an employer acts intentionally and is substantially certain that injury to an employee will result, the employer has a specific purpose to inflict injury.

▪ Applying the *McCoy* "specific purpose" test in conjunction with our interpre-

tation that "specific purpose" embraces the "substantial certainty" formulation of *Millison,* plaintiffs' claim concerning Stephen Speck's initial illness remains barred by the workers' compensation statute. *See Millison,* 501 A.2d at 514–17[3–6]. However, we believe that plaintiffs' averments that defendant "did ... intentionally withhold information regarding the health of Stephen Speck" might form the basis for a cause of action and, in light of our interpretation of the *McCoy* "specific purpose" test, we reverse and remand to give plaintiffs an opportunity to replead.

Reversed and remanded.