Harlen J. MEYER and George J. Biller, Jr., Plaintiffs–Appellants,

v.

James B. McGARVIE, Carol B. McGarvie, Michael Zellers, Gloria Zellers, James F. Ferrick, Mary W. Ferrick and St. Louis Corporation, Defendants–Respondents.

No. 62628.

Missouri Court of Appeals, Eastern District, Division Two.

June 22, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1993.

Gallop, Johnson & Neuman, Michael A. Kahn, Daniel Vogel, Clayton, for plaintiffs-appellants.

Joseph J. Becker, St. Louis, for defendants-respondents.

**CRANDALL, Presiding Judge.**

Plaintiffs, Harlen W. Meyer and George J. Biller, Jr., brought an action against defendants, James B. McGarvie, et al., on a guaranty agreement; and the trial court entered judgment in favor of plaintiffs, pursuant to a jury verdict. Plaintiffs appeal from the order of the trial court which granted a new trial to defendants and which granted conditional remittitur in the event the grant of a new trial was reversed on appeal. We reverse and remand in part and affirm in part.

In the fall of 1986, plaintiff, Harlen W. Meyer (Meyer), entered into negotiations with defendant, James B. McGarvie (McGarvie), for the sale of Hawthorn Missouri, Inc. (Hawthorn). Hawthorn was a tarpaulin manufacturing company; and Meyer and plaintiff, George J. Biller, Jr. (Biller), were its sole shareholders. Biller was the plant manager for Hawthorn; Meyer was its financial manager. McGarvie was the representative of St. Louis Corporation, which was a closely-held company owned by him and defendant, James H. Ferrick. The negotiations included the furnishing of financial statements by Hawthorn which reflected Hawthorn's net worth at various times throughout the 1985 and 1986 fiscal years.

After Meyer rejected an initial proposal to buy Hawthorn in November 1986, St. Louis Corporation prepared a "Purchase and Sale Agreement" (sale contract) on February 8, 1987, which contained the essential terms for the sale of Hawthorn. The final sale contract was signed on June 2, 1987, and contained the same terms for the sale as the February 8th sale contract. Closing was set for June 16, 1987. The sale contract provided for a total purchase price of $519,000.00: $200,000.00 at closing; and $159,500.00 to Meyer and $159,500.00 to Biller, payable in three annual installments of approximately $53,166.67 each. The yearly installments were consideration for plaintiffs' performance under a "Consulting and Noncompetition Agreement" (noncompetition agreement) by which each plaintiff had to provide, upon request, up to eighty hours of consulting services for three months after the sale; and by which neither plaintiff could become affiliated with a company that manufactured or sold tarpaulins to existing Hawthorn customers. The sale contract stated that payments under the noncompetition agreement were guaranteed by Ferrick, McGarvie, and defendant, Michael Zellers (Zellers), and their

respective wives (all parties to the guaranty agreement collectively referred to as "guarantors"). The guarantors signed a separate "Guaranty" agreement (guaranty) prior to closing. Pursuant to the guaranty, all guarantors "unconditionally" guaranteed the punctual payments of the yearly amounts due plaintiffs.[1]

At closing, Meyer informed Ferrick, McGarvie, and Zellers that he had written two $7,000.00 checks drawn on Hawthorn, one to himself and one to Biller. He explained that a total of $14,000.00 was necessary to cover the potential personal tax liability which he and Biller would incur as a result of a $35,000.00 to $40,000.00 profit made by Hawthorn from April 1, 1987, the beginning of Hawthorn's fiscal year, to June 15, 1987, the day before closing. There was no objection at the closing to the issuance of these checks. Meyer explained that the $14,000.00 figure was an estimate, but stated that he thought that his figures were accurate. After closing, McGarvie declined Meyer's request to go to Hawthorn's plant to conduct a full inventory to verify Meyer's figures. At closing, Hawthorn's financial statements for the fiscal year ending March 31, 1987, indicated that the company was worth in excess of $210,-000.00.

During the remainder of July, Biller provided consulting services by acquainting Zellers, who was the new plant manager for St. Louis Corporation, with Hawthorn's operations. St. Louis Corporation did not request Meyer to provide consulting services.

In January 1988, plaintiffs received the first installment payments from St. Louis Corporation. St. Louis Corporation deducted $5,000.00 from the $53,166.67 as an offset to the $7,000.00 which each plaintiff had taken at closing. McGarvie claimed that the deduction was warranted because it was doubtful that Hawthorn had made a profit during the fiscal period from April 1, 1987, through July 15, 1987. In January 1989, St. Louis Corporation paid the second installment payments to plaintiffs. By this time, an accounting firm had established that for the period between April 1, 1987, through July 15, 1987, Hawthorn had actually experienced a loss of $22,820.00, which amount included the $14,000.00 taken by plaintiffs at closing. Accordingly, St. Louis Corporation deducted $2,347.97 from each of the second payments, which reflected the remaining $2,000.00 of the original $7,000.00, plus interest. When the final installment payments came due in January 1990, St. Louis Corporation did not pay either plaintiff.

Plaintiffs brought the present action against defendants on the guaranty. The individual defendants raised the affirmative defense of fraudulent misrepresentation, alleging that plaintiffs, by misrepresenting the financial status of Hawthorn, induced certain of them to sign the sale contract and induced the guarantors to sign the guaranty; and that plaintiffs signed the noncompetition agreement without an intent to perform. Thereafter, St. Louis Corporation intervened, alleging the same fraud and also alleging breach of the noncompetition agreement. The case was tried to a jury. The jury returned verdicts in favor of plaintiffs and awarded them each $80,666.67, which amount consisted of the final installment payment of $53,166.67 plus costs and attorney's fees. The court added prejudgment interest and entered judgment in the amount of $92,976.66 for each plaintiff.

Defendants then filed their motion for new trial, alleging, *inter alia*, instructional error in that the instructions submitted to the jury required defendants to prove

---

**1.** Plaintiffs do not raise the issue of whether the contract was severable into (1) a contract for the sale of the business for which plaintiffs were paid $200,000.00 and (2) an employment contract and a noncompetition agreement for which plaintiffs were paid a total of $319,- 000.00. None of the parties address precisely under which part of the contract the last installment payment was due. In addition, there was no indication that any fraud occurred in the procurement of the employment and noncompetition contracts.

fraudulent inducement by clear and convincing evidence. The trial court granted defendants' motion for new trial on that ground, denied the motion on all other grounds, and vacated the verdicts in favor of plaintiffs. The court also conditionally granted remittitur of the total award of $55,000.00 of attorney's fees to plaintiffs and reduced that award by $20,000.00, in the event the court's order granting the new trial was reversed on appeal.

We first consider whether the trial court erred in granting defendants' motion for new trial on the basis of instructional error. Defendants' motion for new trial posited that the clear and convincing standard of proof was improper and that the proper burden of proof was a preponderance of the evidence standard, as set forth in MAI 3.01 [1986 Revision]:

> In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden of causing you to believe a proposition of fact is upon the party who relies upon that proposition. In determining whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

Generally, an appellate court will be more liberal in upholding a trial court's decision to grant a new trial than it will be if the trial court denies a new trial. *Craft v. Scaman*, 715 S.W.2d 531, 534 (Mo.App. 1986). However, a trial court's authority to grant a new trial is discretionary only as to questions of fact, not as to matters of law. *McTeer v. Clarkson Const. Co., Inc.*, 807 S.W.2d 174, 176 (Mo.App.1991). Instructional error involves a question of law; therefore, if a new trial has been granted for such error, the appellate court must examine the record presented to determine whether the challenged instructions were erroneous and, if so, whether such instructions prejudiced the party challenging the instructions. *Craft*, 715 S.W.2d at 534. In recent years, Missouri courts have been reluctant to reverse a judgment for instructional error unless there is a substantial indication of prejudice. *Id.*

We acknowledge that the burden of proof in a fraudulent misrepresentation case tried to a jury is no greater than that required in any other case tried to a jury and that the proper burden of proof instruction is MAI 3.01. *Walters v. Maloney*, 758 S.W.2d 489, 495–496 (Mo.App. 1988). We must next determine whether defendants were prejudiced by the giving of the erroneous instructions. In order for prejudice to lie, defendants must establish that their affirmative defense of fraudulent misrepresentation was a submissible issue for the jury.

In law and in equity, one of the essential elements of fraud is a false representation. *Blaine v. J.E. Jones Const. Co.*, 841 S.W.2d 703, 705 (Mo.App.E.D.1992). Specifically, fraudulent misrepresentation requires proof of nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *MacCurrach v. Anderson*, 678 S.W.2d 459, 462 (Mo.App.1984). Although fraud may be established by circumstantial evidence, defendants' case will fail if they can show only facts and circumstances which are equally consistent with honesty and good faith. *See Bank of Kirksville v. Small*, 742 S.W.2d 127, 131 (Mo. banc 1987). To make a submissible case, defendants must adduce evidence to establish each of the nine elements. *See Id.*

In determining whether there was sufficient evidence to submit defendants'

fraud issue to the jury, the evidence is viewed in the light most favorable to defendants, giving defendants the benefit of any favorable inferences and disregarding any unfavorable inferences. *See Small,* 742 S.W.2d at 131. Defendants' evidence of fraud was that plaintiffs made false representations to them regarding Hawthorn's financial condition, with the intent that certain defendants purchase Hawthorn's stock and that the defendants-guarantors execute the guaranty.

■ Defendants' evidence of the alleged fraud with regard to representation of Hawthorn's profits from April 1, 1987, through June 15, 1987, demonstrates only that Meyer stated that the $14,000.00 figure was an "estimate" of the future tax liability which he and Biller would incur as a result of the profits Hawthorn earned during that period of time. At no time did Meyer represent that this figure was a fact, as opposed to his opinion of the potential tax liability. Fraudulent misrepresentation cannot be based on a mere opinion. *Watkins v. Gross,* 772 S.W.2d 22, 24 (Mo. App.1989).

In addition, as to the financial statements of March 31, 1987, which defendants allege inaccurately reflected Hawthorn's profitability at the time of closing, McGarvie's testimony was that a comparison of Hawthorn's books and the challenged financial statements revealed a discrepancy of only $4.00 in one group of figures. As to other figures in the financial statements, McGarvie was unable either to identify which ones were inaccurate or to quantify any discrepancy which supposedly existed. Furthermore, the sale price for Hawthorn was determined prior to the preparation of the March 31, 1987, financial statements and there is no indication that the final contract was contingent on Hawthorn's net worth at the time of closing. In fact, correspondence from Ferrick to Meyer indicated that the sale contract was based on the financial statements of September 30, 1986, not those of March 31, 1987.

We find that defendants have failed to adduce substantial evidence that plaintiffs made false representations regarding Hawthorn's financial condition. By failing to make a submissible case on an essential element of fraud, defendants were not entitled to submit the issue to the jury. Because the issue should not have been submitted, any instructional error is not prejudicial. The trial court erred in granting a new trial on that basis.

We next consider whether the trial court erred in reducing the jury's award to plaintiffs of attorney's fees of $55,000.00 by $20,000.00.

■ The court may enter a remittitur order "if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages...." § 537.-068, RSMo (Cum.Supp.1992). The trial court has broad discretion in ordering remittitur and its decision will not be disturbed on appeal absent an abuse of its discretion. *Hall v. Superior Chemical & Fertilizer, Inc.,* 819 S.W.2d 422, 425 (Mo. App.1991). In addition, the trial court is considered an expert on attorney's fees. *Campbell v. Kelley,* 719 S.W.2d 769, 772 (Mo. banc 1986).

■ At trial, plaintiffs' counsel submitted not only copies, but also a summary, of the bills sent to plaintiffs from his firm in the amount of $31,974.75. In addition, he testified that the total amount of attorney's fees incurred during the month of July 1991, the month the case was tried, were estimated at approximately $20,000.00 to $25,000.00. Plaintiffs' counsel, however, offered no evidence as to the reasonableness of these fees and failed to substantiate many of the fees charged with evidence as to the hourly rates charged by various attorneys and paralegals associated with the law firm. We have reviewed the record and find no abuse of the trial court's discretion in granting remittitur of the attorney's fees. Plaintiffs' point is denied.

Finally, we consider plaintiffs' request for an additional award of attorney's fees

and costs on appeal. In the instant action, the guaranty specifically provided that the guarantors would pay all expenses incurred by plaintiffs in enforcing any rights under the guaranty, including those expenses incurred "during ... any appellate phases of litigation." Accordingly, pursuant to the guaranty agreement, plaintiffs are entitled to the trial court's consideration of the costs and attorney's fees which they incurred on appeal.

The trial court's order granting a new trial is reversed and the cause is remanded with directions to the trial court to reinstate the judgments and to determine the amount of attorney's fees and costs due plaintiffs as a result of this appeal. The trial court's grant of remittitur is affirmed.

PUDLOWSKI and GRIMM, JJ., concur.