**Kevin HOWE, Plaintiff,**

v.

**LEVER BROTHERS COMPANY,**
**Defendant/Third–Party**
**Plaintiff/Respondent,**

**and**

**FRU–CON CONSTRUCTION COMPANY,**
**Defendant/Third–Party**
**Plaintiff/Respondent,**

v.

**CORRIGAN COMPANY MECHANICAL CONTRACTORS, INC., Third–Party Defendant/Fourth–Party Plaintiff/Appellant,**

v.

**RATICAN INSULATION COMPANY,**
**Fourth–Party Defendant/Respondent.**

**No. 60928.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 20, 1993.

Daniel E. Wilke, Lynda M. Hetlage, Dean R. Gallego, Clayton, for appellant.

Laura B. Allen, St. Louis, for respondent.

GRIMM, Judge.

In this case, the trial court was called upon to interpret various provisions of three construction contracts. We find no error in its interpretations and affirm.

Plaintiff, an employee of Insulation Abatement Services, Inc., was injured in a fall from scaffolding while performing asbestos removal work. He sued the owner of the property, Lever Brothers; Lever Brothers' general contractor, Fru–Con; and Fru–Con's subcontractor, Corrigan Company. Corrigan's subcontractor, Ratican Insulation Company, was added to the action by Corrigan as a fourth-party defendant. Although not a party, we note that plaintiff's employer was a subcontractor of Ratican.

Lever Brothers, with Fru–Con's, Corrigan's and Ratican's consent, settled plaintiff's claim. Each of the four contributed an equal amount to the settlement. All agreed (1) the amount of settlement was reasonable, (2) none of them were acting as volunteers in making the settlement, and (3) the trial court would determine all pending claims among them for contractual indemnity. The trial court found that Corrigan was required to indemnify Lever Brothers and Fru–Con. It also found that Corrigan was not entitled to indemnity from Ratican.

Corrigan appeals, raising seven points of error. We observe that in this judge-tried matter, we are bound by the dictates of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### I. Fru–Con/Corrigan Subcontract

■ For its first point, Corrigan alleges the trial court erroneously found that the Fru–Con/Corrigan subcontract was in effect on the date of plaintiff's injury. Corrigan contends that it did not execute the contract until a few days after plaintiff was injured. Therefore, it alleges, "none of the provisions in the ... written con-

tract, including the indemnity provisions, insurance provisions and/or incorporation by reference clauses, were in effect" on July 17, 1985, the date of plaintiff's injury.

Conflicting evidence on the effective date of the subcontract was presented to the trial court. We mention three examples. First, the opening clause of the Fru-Con/Corrigan subcontract provides: "THIS SUBCONTRACT AGREEMENT entered into this *24th* day of *June, 1985....*" Corrigan's president signed the subcontract on July 19, 1985.

Second, Corrigan's executive vice president filed an affidavit in response to a motion. That affidavit provides, in pertinent part: "In June of 1985, Corrigan Company entered into a subcontract with [Fru-Con] for work to be done at the Lever Brothers Company south powders project." At trial, the executive vice president said: "Prior to even a signed contract we were working off of an [oral] agreement. They happened to be the same." Corrigan contends that although Corrigan's charges for work performed were the same under both contracts, the indemnity provision did not come into existence until the written contract was signed.

Third, in a verified motion for summary judgment filed in this case, Corrigan said:

2. On or about May 31, 1985, Lever Brothers and Fru-Con entered into a contract or a purchase order wherein Fru-Con would perform work in the construction project referred to in Plaintiff's First Amended Petition.

3. On or about June 25, 1985, Corrigan entered into a subcontract with Fru-Con in order to perform part of the work which Fru-Con had agreed to perform in its contract with Lever Brothers referred to in paragraph two above.

However, at trial, Corrigan's executive vice president testified Corrigan had three different agreements. Work began on June 17 under "some type of oral arrangements," some "type of written arrangements existed as of June 24th," and then "some agreement [dated June 24] was signed."

■ The resolution of conflicting evidence is for the trial court. The trial court found that Fru-Con entered into the written subcontract "with Corrigan Company effective June 24, 1985." We defer to the trial court's finding. Point denied.

## II. Corrigan/Ratican Indemnity Agreement

For its second point, Corrigan argues the trial court erred in finding "Corrigan was not entitled to indemnity from Ratican based on the agreement between them in that the agreement did not provide for indemnity for any other persons' negligence." Corrigan gives two rationales for this argument. First, it argues Ratican was the only party the court found negligent, and their "valid, enforceable" indemnity agreement required Ratican to indemnify Corrigan for Ratican's negligence. Second, the Workers' Compensation Act does not prohibit such indemnity. We resolve this point with the first rationale and thus do not address the second.

We first observe that contrary to Corrigan's argument, the trial court did not specifically find any party negligent. The trial court did find that "the acts of Ratican ... and the acts of [plaintiff] ... were the primary cause of the accident and injuries." It also specifically found that plaintiff's injuries were not caused by the sole negligence of Lever Brothers or Fru-Con. However, the trial court did not exonerate Lever Brothers or Fru-Con from any or all liability for negligence for plaintiff's injuries.

■ Before turning to the indemnity provisions, we note " '[i]t is well[-]settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, *where such intention is not expressed in unequivocal terms.*' " *Missouri Dist. Tel. Co. v. Southwestern Bell Tel. Co.*, 338 Mo. 692, 93 S.W.2d 19, 28 (1935) (quoting *Southern Bell Tel. & Tel. Co. v. Mayor & Bd. of Alderman of Meridian*, 74 F.2d 983, 984–85 (5th Cir.1935)) (emphasis added); *see also Pilla v. Tom-Boy, Inc.*, 756 S.W.2d 638, 641 (Mo.App.

E.D.1988); *Bonenberger v. Associated Dry Goods Co.,* 738 S.W.2d 598 (Mo.App.E.D. 1987).

With this background, we now turn to the subcontract between Corrigan and Ratican. It includes the following indemnity provisions:

"[Ratican] hereby assumes entire responsibility and liability for any and all damage and injury of any kind or nature whatsoever to all persons, whether employees or otherwise, and to all property, growing out of, or resulting from the labor or material or both used in the performance of this contract or occurring in connection therewith, and agrees to indemnify and save harmless [Corrigan and/or Lever Brothers] and their agents, servants and employees from and against any and all loss, expense, including legal fees and disbursements, damage or injury growing out of or resulting therefrom, or occurring in connection therewith...."

■ The trial court found that this provision "lacks the required specificity which would allow Corrigan to be indemnified by Ratican for Corrigan's own negligence contributing" to plaintiff's injuries. It is in this finding, Corrigan alleges, that the trial court erred. We disagree.

In its brief, Corrigan argues that contrary "to the trial court's findings and conclusions, Corrigan is not requesting Ratican indemnify it for Corrigan's negligence." Rather, it argues, it is requesting indemnification for the "liability deflected to Corrigan from Lever Brothers and Fru-Con" by virtue of Corrigan's contract with Fru-Con.

Under the terms of the contract between Lever Brothers and Fru-Con, Fru-Con agreed to indemnify Lever Brothers for liability imposed against it "except that [Fru-Con] assumes no liability for the sole negligent acts" of Lever Brothers. And under its contract with Fru-Con, Corrigan agreed to "indemnify, defend and save [Fru-Con] and [Lever Brothers] harmless ... save and except such claims ... which may result solely and proximately from the negligent willful acts or omissions" of Fru-Con or Lever Brothers. Because it expressly and unequivocally agreed to do so, Corrigan must indemnify Fru-Con and Lever Brothers.

However, the indemnity provision Ratican gave Corrigan is silent concerning indemnity for injuries caused by Corrigan's negligence. Corrigan's liability for the negligence of Lever Brothers and Fru-Con arises from its indemnification agreement with Fru-Con. The indemnity provision Ratican gave Corrigan is similarly silent on indemnity for injuries caused by another party for which Corrigan assumes liability. Ratican neither expressly nor unequivocally agreed to indemnify Corrigan for the negligence of any party other than itself.

We are unable to say on the record before us that liability to plaintiff was created solely by Ratican. Thus, in the absence of "unequivocal terms" granting Corrigan the right to indemnification from Ratican (1) for Corrigan's negligence or (2) from Corrigan's obligation to indemnify Lever Brothers and Fru-Con from their negligence, Ratican was not obligated to indemnify Corrigan. Point denied.

## III. Incorporation by Reference

■ For its third point, Corrigan alleges the trial court erred in finding "that paragraph 2 of the Corrigan/Ratican [sub]contract incorporated by reference only the plans and specifications existing on the project between Corrigan," Lever Brothers and Fru-Con. Corrigan argues that the plain language of this provision and industry practice incorporated the "administrative provisions of all other project documents between Corrigan, [Lever Brothers] and [Fru-Con]" into its subcontract with Ratican. Corrigan alleges this included its specific obligation to indemnify and insure for liability imposed on Lever Brothers and Fru-Con.

Paragraph 2 of the subcontract between Corrigan and Ratican states as follows:

Work performed by [Ratican] shall be in strict accordance with all applicable plans, general conditions, specifications, and addenda thereto, and [Ratican] is bound by all provisions of these documents, and also all other documents to which [Corrigan] is bound, and to the

same extent. Where his specific work as set forth in the plans, specifications and addenda, is not described in this order, [Ratican] shall perform all work normally construed to come within the scope of his activities.

The trial court made two consistent findings concerning this paragraph. First, it said: "The Court finds this clause to require Ratican to conform its work under the purchase order to the plans and specifications existing between Corrigan and other entities on the project." Second, the clause "applies to work to be performed by Ratican and not to indemnity."

Corrigan cites *List & Clark Constr. Co. v. McGlone*, 296 S.W.2d 910 (Mo.App.W.D. 1956), in support of its position. *List*, however, is distinguishable. There, the clause was as follows:

"Except as modified or otherwise provided in this subcontract and except as obviously inapplicable the mutual rights and obligations of the parties hereto shall be those set forth in said contract between 'Contractor' and the Railroad Company, substituting therein 'Sub-Contractor' for 'Contractor' and 'Contractor' for 'Railroad Company.'"

*Id.* at 911. There the clause expressly stated that the "mutual rights and obligations" of the parties were those set forth in the main contract. Here, the paragraph contains two sentences. The first sentence begins: "Work performed." The second sentence begins: "Where his specific work." These two references to "work" clearly limit the application of this paragraph to the "work" performed under the contract.

The trial court did not err in making its findings. Corrigan's third point is denied.

### IV. Fourth-Party Petition

■ For its fourth point, Corrigan alleges the trial court erroneously dismissed Count II of its fourth party petition because it "was entitled to contribution from Ratican for [plaintiff's] non-accidental injury in that Ratican willfully, and with substantial certainty that employee injury would result, caused [plaintiff's] injuries...."

■ Pursuant to § 287.120, RSMo Cum Supp.1992, Ratican is a statutory employer of plaintiff. As such, it is shielded "from any liability for contribution under the apportionment of fault doctrine...." *Sweet v. Herman Bros. Inc.*, 688 S.W.2d 31, 32 (Mo.App.W.D.1985) (citing *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979)).

■ A narrow exception to this rule imposes tort liability on an employer who intentionally inflicts injury on an employee. *See Speck v. Union Elec. Co.*, 741 S.W.2d 280, 282-83 (Mo.App.E.D.1987). Corrigan's fourth-party petition does not include any allegations that Ratican acted with intent to injure plaintiff. Without allegations that Ratican acted intentionally, Corrigan could not recover on its fourth-party petition. We see no error in the trial court's dismissal. *See McCoy v. Liberty Foundry Co.*, 635 S.W.2d 60, 62-3 (Mo.App.E.D. 1982); *cf. State ex rel. Hartman v. Kintz*, 832 S.W.2d 9, 10 (Mo.App.E.D.1992). Point denied.

### V. Insurance Coverage

■ For its fifth point, Corrigan alleges the trial court erred "by failing to find that Lever Brothers and Fru-Con waived the Fru-Con/Corrigan contract provision requiring Corrigan to obtain certain liability coverage which named Lever Brothers and Fru-Con as additional named insureds, since both parties permitted and even encouraged Corrigan to begin work without requiring strict compliance with the contract provisions and this inconsistent action constituted a waiver of the right to demand strict compliance with such provisions."

The Fru-Con/Corrigan contract required Corrigan to obtain "comprehensive general and auto liability insurance with limits of $500,000.00 with respect to injury or death of persons...." The policies were to name Fru-Con and Lever Brothers as additional insureds. Although the contract required that certificates of insurance "shall be delivered to [Fru-Con] before the Subcontract Work is commenced," both parties agree that the certificates were not delivered before work began.

Corrigan argues that Fru–Con's and Lever Brothers' disregard of "their contractual right to obtain status as insureds under [its] policies," coupled with their permitting and encouraging the commencement of work, constitutes a waiver of their rights. We disagree.

A waiver is the "intentional relinquishment of a known right," *Heintz v. Swimmer*, 811 S.W.2d 396, 399 (Mo.App.E.D.1991) (citing *Brown v. State Farm Mut. Auto Ins. Co.*, 776 S.W.2d 384, 386 (Mo. banc 1989)), and may be implied from conduct. However, to rise to the level of a waiver, conduct "must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of their conduct is possible." *Waterwiese v. KBA Constr. Managers, Inc.*, 820 S.W.2d 579, 585 (Mo.App.E.D.1991) (citing *Steinberg v. Fleischer*, 706 S.W.2d 901, 905 (Mo.App.E.D.1986)).

The evidence supports the trial court's finding that this contract provision was not "knowingly waived." Testimony indicated that Fru–Con and Corrigan had dealt with each other on various projects in the past. The contracts on these various projects included similar provisions concerning insurance. Moreover, the project was "a very dynamic very fast track project," where the paper work followed the commitments. At most, it may be said that Lever Brothers and Fru–Con waived the requirements that they have the insurance certificates in hand. They did not, however, waive the requirement that Corrigan obtain insurance naming them as additional insureds.

Based on the evidence, we cannot say that the only reasonable explanation of Lever Brothers' and Fru–Con's conduct was a waiver. *See id.* Point denied.

## VI. Evidence of Negligence

For its next point, Corrigan argues the trial court erred in entering judgment in favor of Lever Brothers and Fru–Con. It contends that it was not required to indemnify Lever Brothers or Fru–Con because "there was insufficient evidence to demonstrate that the negligence of any other party caused plaintiff's injuries[,] which was proof necessary to trigger operation of written contract provisions for indemnity between the parties." [1]

In its argument, Corrigan admits that because Lever Brothers "made a demand on both Corrigan and Fru–Con to assume [its] defense and both Corrigan and Fru–Con refused, Lever Brothers was free to settle Plaintiff's claim and then seek indemnity without proving its own liability. *Pilla v. Tom–Boy, Inc., et al.*, 756 S.W.2d 638, 640 (Mo.App. [E.D.] 1988)." Corrigan, however, contends that insufficient evidence supported the trial court's finding that Ratican's negligence caused or contributed to cause plaintiff's injury.[2]

The trial court heard testimony from plaintiff and a co-worker. In addition, management personnel from several of the parties testified as to their investigation into plaintiff's fall.

The trial court found that the acts of Ratican and plaintiff himself were the primary cause of plaintiff's injury. Without detailing the evidence, suffice it to say that the evidence supported the trial court's finding.

Moreover, the indemnity clause does not require a finding that another party, here Ratican, was negligent. Rather, it requires Corrigan to provide indemnity for injuries arising out of the execution of the work, provided the injuries were not caused by the sole negligence of Lever Brothers or Fru–Con. The evidence supports the trial court's finding that neither Lever Brothers nor Fru–Con were solely negligent. Consequently, the indemnity provisions were triggered and Corrigan was required to provide indemnity. Point denied.

1. See *supra* section II for language of the indemnification agreements.

2. We recognize that points in briefs are not always consistent. Such is the case here. Corrigan's point two, in part, says: "Ratican was the only party the court found was negligent in causing plaintiff Howe's injury."

### VII. Corrigan/Fru–Con Indemnity Agreement

For its final point, Corrigan alleges the trial court erred in entering judgment in Fru–Con's favor for indemnity because the indemnity provision was not "sufficiently specific to allow for Fru–Con's deflecting its own negligence liability to Corrigan in that the contract did not in clear and unequivocal language dictate that Corrigan would indemnify Fru–Con for its own negligence liability."

As we discussed in Corrigan's second point, a provision indemnifying the indemnitee against losses as a result of his own negligence must be expressed in unequivocal terms.

Corrigan unequivocally agreed to indemnify Fru–Con and Lever Brothers for injuries with the exclusion of instances where either Fru–Con or Lever Brothers was the only party negligent. Point denied.

The judgment of the trial court is affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.