Ruth J. ALLISON, Appellant,

v.

BARNES HOSPITAL, Respondent/Cross–Appellant,

v.

MILLAR ELEVATOR SERVICE CORPORATION, Cross–Respondent.

Nos. 63324, 63732.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 29, 1994.

Callis, Papa, Hale, Jensen, Jackstadt, Bailey & Halloran, Mark P. Spengler, Granite City, IL, for Allison.

Sandberg, Phoenix, & von Gontard, P.C., Joseph P. Murray, & Kenneth W. Bean, St. Louis, for Barnes Hosp.

Coburn & Croft, Dean L. Franklin, St. Louis, for Millar Elevator.

KAROHL, Judge.

Ruth J. Allison sued Barnes Hospital for personal injuries she allegedly sustained on October 1, 1986, when a malfunctioning elevator door at Barnes Hospital struck her while prematurely closing. Barnes filed a third-party petition versus Millar Elevator Service Corporation, successor to Schindler Elevator Corporation, in search of indemnity based on an Elevator Maintenance Agreement. Barnes also claimed reimbursement of the cost of defending the claim filed by Allison. Only that part of the third-party petition against Millar which sought apportionment of fault was submitted to the jury. Plaintiff appeals judgment on a verdict which found plaintiff 100 percent at fault and Barnes Hospital 0 percent at fault. Barnes appeals a partial directed verdict which rejected submission of Barnes' cause of action based on a contractual duty to defend plaintiff's suit.

Plaintiff Allison's theory, submitted in the verdict directing instruction, was the elevator doors were not reasonably safe and Barnes' employees failed to inspect the elevators daily. She testified the right door closed on her

as she was exiting the elevator. Barnes offered testimony from other occupants of the elevator who said plaintiff was engaged in a conversation and walked into the door as it was opening.

Because the jury verdict involved liability exclusively, only facts relating to that issue are necessary. On October 1, 1986, plaintiff, her husband and other friends and relatives of Kenny Ulett were visiting him at Barnes Hospital. While at Barnes, six to eight persons were leaving elevator number eight on the tenth floor. Plaintiff, and two witnesses favorable to her theory, testified that she was exiting the elevator behind her husband. Frank Ulett was holding the left door open. He felt pressure indicating the doors were prematurely closing. Plaintiff was struck by the right door.

Plaintiff's expert discussed two safety systems on the elevator. He opined, "Either the safety device or reopening device was not operating properly or ... the door operator [a mechanical device] was moving too fast to allow for the proper signal to get to it in time." That condition could have been discovered by inspection. By custom and practice, elevator systems need to be monitored and inspected on a day-to-day basis by the owner; the employees of Barnes have the duty and could have found the defects, the expert further stated. However, plaintiff's expert did not believe Mr. Ulett could have been holding the left door. He did not know how long before the event the system was defective.

Larry Suhre testified plaintiff walked into the door on her first step when the doors did not open "as fast as Mrs. Allison thought." She was the first person trying to get out, but the door had not yet opened wide enough. Suhre recalled her saying she was not hurt. Additionally, he remembered plaintiff or her husband saying, "there was going to be a lawsuit over this." Suhre particularly remembered the events because of this conversation.

Gail Hanvey supported Suhre's view. She recalled thinking, "God, Judy [plaintiff], watch where you're going." Hanvey said plaintiff "brushed" into the door as it began to open about "mid body," then she moved "slightly as though you would stop to wait for it to continue to open."

Barnes' expert opined that plaintiff must have walked into the door. Plaintiff's theory of a mechanical failure while the doors tried to close was "an impossible situation. It does not square," he concluded. This view was based on the mechanical fact that the two elevator doors work together—it's impossible to hold one door while the other door closed. Both experts based their testimony, in part, on the deposition testimony of the eyewitnesses.

### PLAINTIFF'S APPEAL

Plaintiff raised the issue regarding the qualifications of the trial judge in her motion for new trial. She contends that because of the provisions of Rule 2, Canon Number 3 C(1)(c) of the Missouri Supreme Court Rules, the trial judge "should have disqualified himself from this case or, at the very least, disclosed [his] relationship [with Defendant Barnes] to the plaintiff in order for her to decide whether to move for a change of judge." The matter was developed on the record by sworn testimony and affidavits. The evidence disclosed that Dr. Mary Tillman, the judge's wife, had courtesy staff privileges at Barnes Hospital at the time of the trial.

Plaintiff refers to Rule 2, Code of Judicial Conduct, Canon Number 3 C(1)(c) Disqualification, which reads:

(1) A judge should recuse himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where the judge:. . . .

(c) knows that the judge, individually or as fiduciary, or judges spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

This claim fails for both procedural and substantive reasons. First, the Rule and Canon have no application to the present case. Barnes Hospital is a charitable institu-

tion, Dr. Mary Tillman is not an employee and has not admitted a patient to the hospital in five years. She has "courtesy privileges." The trial judge, under oath, testified that there was no conflict, actual or perceivable, because he had no financial or other interest that could have been affected by the proceeding.

Plaintiff's claim is essentially that the failure of the judge to disclose his wife's relationship with Barnes denied her an opportunity to pursue the issue. This is neither a claim the judge should have been disqualified because of an interest in the outcome, nor a claim of any prejudice. In fact, plaintiff's counsel disavowed any claim of bias or prejudice when presenting the issue during the hearing on the motion for new trial. Point denied.

■ Plaintiff's second claim of error cannot have merit because it is, at most, harmless error. She claims the court erred in not submitting non-MAI instructions to define non-delegable duty and inform the jury Barnes Hospital's duty was non-delegable. The jury found plaintiff 100% at fault. The evidence supporting this verdict consisted of testimony plaintiff brushed into the elevator as it was opening. This is the only basis on which the jury could find plaintiff 100% at fault. There was no evidence which would support a verdict that defendant Barnes Hospital was negligent in any manner which caused plaintiff to be injured while the door was opening. There was no evidence to support a finding that plaintiff was negligent if she was injured when the door was closing. This was not a true comparative negligence case because the evidence the parties presented was insufficient to support a finding that plaintiff's injuries were attributable to negligence of both parties. There was no evidence plaintiff negligently walked into a closing door. The jury verdict excludes the possibility that the court erred in refusing plaintiff's non-MAI instructions to submit the proposition that defendant Barnes Hospital had a non-delegable duty to protect elevator users. The evidence and the verdict exclude any possible prejudice from the rulings.

■ Failure to submit an instruction is error only if it could materially affect the merits. *Delaporte v. Robey Building Supply, Inc.*, 812 S.W.2d 526, 530–531 (Mo.App. 1991); *see Lee v. Mirbaha*, 722 S.W.2d 80, 83–84 (Mo. banc 1986). Plaintiff did not sue for breach of any duty owed to her regarding the opening of the elevator door. Plaintiff's theory of Barnes' liability, and Barnes' theory of Millar's contingent liability, relates only to a breach of duty which allowed the elevator doors to malfunction when closing. In light of the verdict, it is not possible to find Barnes or Millar at fault. The jury found plaintiff walked into the door before it completely opened. This foreclosed the possibility that any alleged breach of duty by defendant or third-party defendant could have caused plaintiff's injuries.

■ Plaintiff claims error in allowing defendant's expert to express his opinion on credibility of the eyewitnesses. The expert, Tom Moskal, opined it was more likely plaintiff walked into an opening door. This testimony was based upon his understanding as an expert of the mechanical operation of elevator doors. They were constructed to operate together or not at all. Plaintiff's argument to this court is that this testimony invaded the province of the jury and constituted a comment on the credibility of plaintiff's eyewitnesses. Because of the absence of an objection on this account or any other, the claim of error is not preserved. The ruling on a motion in limine did not relieve plaintiff of the requirement to timely object. *Robbins v. Jewish Hospital of St. Louis*, 663 S.W.2d 341, 348 (Mo.App.1983).

The testimony was not a direct comment on credibility, it was a preface to the analysis of an expert that the injury could not have happened as plaintiff's eyewitnesses described. The testimony was that their version was mechanically impossible. Plaintiff's own expert agreed with part of this opinion, particularly, that the left door could not have been held open while the right door closed. There was no error on this account.

■ Plaintiff also argues the court erred in disallowing cross examination of defendant's expert with questions framed to include plaintiff's version of the facts. The trial court sustained objections to a hypothet-

ical question in that form because it would have required the expert to assume facts which he had testified could not have occurred. Plaintiff sought an opinion that if plaintiff's facts were true, plaintiff was injured while the left door was held and the right door was closing, then the door was malfunctioning. Apart from the fact that the answer to that question is self evident because the assumed facts would have been a malfunction by definition, plaintiff was not entitled to force an answer to a hypothetical question based upon facts which the witness rejected as impossible. *Spearman v. Hoskins,* 806 S.W.2d 440, 441 (Mo.App.1991). Under the facts the court did not abuse its discretion in excluding the defective hypothetical question, *Inman v. Bi–State Development Agency,* 849 S.W.2d 681, 683 (Mo. App.E.D.1993), and the self evident answer forecloses any prejudice.

The verdict and judgment for defendant is affirmed.

## DEFENDANT–BARNES HOSPITAL'S APPEAL

Barnes offered the Elevator Maintenance Agreement in evidence. It relied on provisions in the agreement in which Millar agreed:

> Contractor shall indemnify and hold harmless the owner for damages to property or persons, including death, directly *caused in whole or in part* by the negligent acts or omissions of the contractor, its employees, servants or agents; contractor will defend any and all suits which may be brought against the owner for damages to property or persons, including death, directly *caused in whole or in part* by the negligent acts or omissions of the contractor, its employees, servants or agents. (Our emphasis)

Defendant tendered the defense of plaintiff's lawsuit to Millar. Millar refused to defend, claiming plaintiff was suing Barnes for negligent acts of Barnes' employees—failure to inspect daily—not for "negligent acts or omissions of the contractor (Millar), its employees, servants or agents." Millar contends plaintiff's petition only implicated Barnes. Thus, under the contract terms,

Millar had no duty to defend or indemnify. By a strict interpretation of the contract, Millar agreed to defend and indemnify only a loss occasioned by negligence of its own employees. By that approach, Millar is not obligated to Barnes in the absence of a clear and unequivocal agreement which creates a duty.

■ The indemnity issue is moot in light of the verdict, judgment and this opinion. What remains is a claim to recover attorney fees and defense costs. Fees and costs are recoverable as damages for breach of an obligation to defend. *Heshion Motors, Inc. v. Western International Hotels,* 600 S.W.2d 526, 539–540 (Mo.App.1980).

Barnes contends that the contractual obligation to defend is a separate agreement from the obligation to indemnify, and should be reviewed liberally. Barnes argues that although the indemnity and the defense provisions appear in a single paragraph, that does not require they be considered together and both interpreted under the strict rules of interpretation adopted for indemnity contracts. The trial court granted a partial directed verdict on this issue, adopting the view that the indemnity agreement and the agreement to defend should be strictly construed together as one agreement. The trial court relied on *Missouri Pacific R.R. Co. v. Rental Storage and Transit Co.,* 524 S.W.2d 898 (Mo.App.1975). Defendant Barnes distinguishes the *Missouri Pacific* case and others, on the contract language which, in those cases, combined indemnity and defense into a single undertaking. *Id.* at 902–903. In *Missouri Pacific,* the agreement to which defendant Barnes refers contained provisions to indemnify and defend in a single clause:

> [Industry] assumes full responsibility for, and shall *defend, indemnify and save harmless* the [Railroad] from and against, any and all *liability, suits, claims, damages, costs* (including attorneys' fees), *losses, outlays,* and *expenses in any manner caused by, arising out of or connected with* the failure or refusal of [Industry] to comply with, observe or perform any of the provisions of this covenant, notwithstanding any possible negligence (whether sole,

concurrent or otherwise) on the part of the [Railroad], its agents or employes [sic]. (Our emphasis) *Id.*

In the case at bar, the Elevator Maintenance Agreement between Barnes and Millar contained the duty to defend in a separate clause from the duty to indemnify.

 The trial court directed a verdict for third-party Millar. The direction of a verdict for defendant is proper only if reasonable minds could not differ as to the proper verdict when the evidence is viewed in a light most favorable to the plaintiff. *Morse v. Volz,* 808 S.W.2d 424, 429 (Mo.App. 1991). However, when the trial court decision is based upon an interpretation of a written contract, it is ordinarily a question of law which we independently review. *Anchor Centre Partners v. Mercantile Bank,* 803 S.W.2d 23, 32 (Mo. banc 1991). The issue here is a question of law, the meaning of the paragraph containing an agreement to indemnify and defend in two separate clauses.

 We reject Barnes' contention that Millar agreed to defend every claim for injuries sustained by use of its elevators during the term of the contract. Both the indemnity obligation and the agreement to defend are conditional. Millar did not agree to indemnify or defend claims asserted against Barnes based only on negligence of Barnes. In the absence of clear, unequivocal provisions evidencing the intent of the parties that Millar would defend claims against Barnes based only on negligence of Barnes' employees, the rule recognized in *Missouri Pacific R.R. Co. v. Rental Storage and Transit Co.,* 524 S.W.2d at 908 controls. The required agreement must be unequivocal. Whether the subject paragraph contains one or two agreements is not decisive because, if there are two agreements, both are subject to the same conditions. The conditions foreclose finding a clear, unequivocal undertaking to "insure" Barnes from loss caused by negligence of its own employees. In the absence of such provisions, Barnes' third-party petition fails. *Bonenberger v. Associated Dry Goods Co.,* 738 S.W.2d 598, 600 (Mo.App. 1987). *Paro v. Pennsylvania R.R. Co.,* 348 S.W.2d 613, 616 (Mo.App.1961). The court

did not err in directing a verdict for third-party defendant Millar.

We affirm the order of directed verdict and the judgment for defendant Barnes Hospital.

CRANE, P.J., and CRAHAN, J., concur.