**CENTRAL CITY LIMITED PARTNER- SHIP, Woodsmill Management Corporation, Plaintiffs,**

**Bill L. Bruce, Plaintiff–Appellant,**

v.

**UNITED POSTAL SAVINGS ASSOCIATION, Defendant– Respondent.**

**No. 66316.**

Missouri Court of Appeals, Eastern District, Division Four

May 30, 1995.

Rehearing Denied July 27, 1995.

**180**

John E. Hilton, Carmody, MacDonald, Hilton, Wolf & Keast, P.C., Clayton, for appellant.

David M. Korum, Jones, Korum, Waltrip & Jones, Clayton, for respondent.

SIMON, Judge.

This appeal arises out of an action for declaratory judgment initiated by the plaintiffs, Bill L. Bruce (Bruce), Woodsmill Management Corporation (Woodsmill) and Central City Limited Partnership (Central). Plaintiffs sought an adjudication of their rights and obligations under a loan agreement and guaranty agreement. Judgment was entered in favor of the defendant, United Postal Savings Association, against Bruce on the declaratory judgment and in favor of defendant on its counterclaim against Bruce. Judgment was entered in favor of Woodsmill and Central. Bruce appealed. We reverse and remand.

Bruce and Woodsmill were general partners in the Central City Limited Partnership. Central managed and operated the Central City Shopping Center (Shopping Center). Central and Bruce entered into a loan agreement and guaranty agreement with the defendant. The agreements are part of a number of documents and modifications which make up the whole transaction.

Pursuant to the loan agreement executed on April 2, 1985, defendant extended a loan of $3,100,000 to Central. The loan was evidenced by a Promissory Note and secured by a Deed of Trust and Security Agreement on the Shopping Center. Under the Promissory Note, Central agreed to pay, in monthly installments, the principal on the loan and interest at a rate of eleven percent per year. The final payment was to be made on April 1, 1990. Central also agreed to pay an additional annual installment which the parties entitled "Additional Interest." Under the loan agreement, additional interest was to equal one half of the net positive cash flow generated from the operation of the Shopping Center. The parties agreed that in no event was the additional interest payment to be less than $300,000.

On the same day the defendant entered into its loan agreement with Central, Bruce executed a guaranty agreement with the defendant, which provided:

ARTICLE II. *SECTION 2.1. Guarantee of Note.* Guarantor hereby unconditionally guarantee (sic) to the [defendant]: (a) the full and prompt payment of $620,000 of the outstanding principal of and premium, if any, on the Note when and as the same shall become due in accordance with the terms of such Note, whether at the stated maturity of the Note, by acceleration or otherwise; (b) the full and prompt payment of any interest owing on $620,000 of the outstanding principal of the Note, when and as the same shall become due in accordance with the terms and provisions of the Note and the Agreement; and (c) the full and prompt payment of any Additional Interest owing pursuant to [the loan agreement], when and as the same shall become due in accordance with the terms and provisions of the Note and the Agreement.

Bruce's guaranty was limited in scope. The parties enumerated conditions under which Bruce would be released from his guaranty and provided:

ARTICLE IV. *SECTION 4.10. Term of this Agreement.* This Guaranty shall be in full force and effect from the date hereof and shall continue in effect until the payment in full of the principal of, premium, if any, and interest on the Note; provided, however, that the obligations of the Guarantor pursuant to *Section 2.1(a) and Section 2.1(b)* [set forth above] shall terminate at such time as the unpaid principal balance of the Note is less than $2,480,000.00; and provided, further, that the obligations of the Guarantor pursuant to *Section 2.1(c)* hereof shall terminate upon payment in full of all obligations owing pursuant to [the section of the loan agreement providing for "additional interest"].

This guaranty agreement did not, however, constitute the entire agreement between Bruce and the defendant.

Central defaulted on performance of the loan agreement and promissory note. After defaulting on the loan, Central agreed to transfer its interest in the Shopping Center to the defendant, without the necessity of foreclosure, through an Agreement for Deed in Lieu of Foreclosure. In order to obtain Bruce's consent to this transfer, defendant entered into an amended guaranty agreement with Bruce. This amended agreement did not supersede the original guaranty agreement but, instead, provided for the defendant's plans to sell the Shopping Center and use the sale proceeds to satisfy the outstanding debt. It provided in pertinent part:

1. *Amendment.* Except as specifically set forth herein, and only to the extent herein modified, amended, or supplemented, the parties agree that each and every term, condition and provision of the Guaranty Agreement heretofore executed and entered into between the parties as of April 2, 1985 be, and the same shall remain, in full force and effect, anything to the contrary herein notwithstanding.

The amended agreement also set forth provisions regarding the nature of Bruce's obligation under the original guaranty agreement:

4. *Obligation of Guarantor.* Subject to the sale of the property and application of the proceeds, Guarantor and the [defendant] agree that as of July 19, 1990, the maximum amount owed by Guarantor to the [defendant] under Article II, Section 2.1 of the Guaranty Agreement is the following sum(s):

| | |
|---|---:|
| Section 2.1(a) | $620,000.00 |
| Section 2.1(b) | 21,265.85 |
| Section 2.1(c) | 300,000.00 |
| **TOTAL** | $941,265.85 |

\*    \*    \*    \*    \*    \*

6. *Application of Sale Proceeds.* ... Upon closing, any and all sale proceeds received by the [defendant] shall be first applied to the balance of indebtedness due the [defendant] in accordance with the outstanding balance set forth in Section 3 of this Guaranty Amendment, and the balance remaining thereafter, if any, shall be immediately due and payable by Guarantor if owed in accordance with the terms of the guaranty agreement.

The balance set forth in Section 3 of the guaranty amendment was identical to the balance of indebtedness as set forth in the

Agreement For Deed In Lieu Of Foreclosure. In that agreement, the parties stated that proceeds of the sale would be applied toward Central's indebtedness in the following order of priority: first interest, past due taxes, sufficient money to remove a mechanic's lien on the Shopping Center, and then principal. After a judgment was entered on the mechanic's lien, the defendant eventually removed the mechanic's lien for $40,000. Bruce signed the Agreement For Deed In Lieu Of Foreclosure in his individual capacity as guarantor. Moreover, the amended guaranty agreement made specific reference to the Agreement For Deed In Lieu Of Foreclosure.

On February 25, 1993, the defendant sold the Shopping Center for $2,081,400. After sale of the Shopping Center, the defendant sent a letter to Bruce demanding payment under the guaranty agreement and amended guaranty agreement. The defendant claimed that the sale of the Shopping Center resulted in a deficiency of $1,737,943.87. Of this amount, the defendant claimed Bruce was responsible for $1,108,717.85, which was comprised of the $620,000 principal Bruce guaranteed, $188,717.85 interest on that principal and $300,000 additional interest.

Bruce, Central and Woodsmill brought an action for declaratory judgment to ascertain the rights and obligations of the parties to these various agreements. The defendant filed a counterclaim against Bruce seeking $1,108,717.85, $40,000 for the mechanic's lien and interest, all of which defendant alleged was owing under the guaranty agreement and the amended guaranty agreement. The trial court ruled against Bruce on the declaratory judgment and on defendant's counterclaim and determined, after application of the sale proceeds, Bruce was responsible for the $620,000 principal.

On appeal Bruce's sole point is directed at the trial court's interpretation of Bruce's agreement with the defendant. Bruce argues that the trial court erred in entering judgment in favor of the defendant because any obligation Bruce owed the defendant under the guaranty agreement was extinguished by the sale of the Shopping Center and the application of the proceeds to Cen-

tral's outstanding loan. Bruce maintains that the terms of his agreement with the defendant are clear and unambiguous. He argues, under the amended agreement, his obligation to the defendant was subject to the sale of property and application of the proceeds toward the loan; once the proceeds were applied to Central's debt in the manner prescribed by the amended agreement and the Agreement For Deed In Lieu Of Foreclosure, the outstanding principal balance on the loan was less than $2,480,000, the additional $300,000 interest was paid, and Bruce's obligations, therefore, terminated by operation of the original agreement.

■ In reviewing a declaratory judgment, we will sustain the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *State Farm Mutual Auto. Ins. Co. v. Flanary*, 879 S.W.2d 720, 721[1] (Mo. App.S.D.1994). The construction and interpretation of a contract is a matter of law, and it is our obligation to determine whether the trial court has made an erroneous construction or interpretation of the contract. *Eatherton v. Moore*, 636 S.W.2d 349, 350[1] (Mo. App.1982).

■ A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Young Dental Mfg. Co. v. Engineered Products, Inc.*, 838 S.W.2d 154, 155 (Mo.App.E.D.1992). A contract is not ambiguous simply because the parties disagree over its meaning. *Id.* at 155–56[3]. Where a contract is not ambiguous, we ascertain the intent of the parties by giving the language used its natural, ordinary and common sense meaning. *Wilshire Const. Co. v. Union Electric Co.*, 463 S.W.2d 903, 906[3] (Mo.1971). We also look to the entire contract and consider the object, nature and purpose of the agreement. *Wilshire* at 906[3]. Where an agreement of parties is evidenced by several documents which refer to each other, are closely related and constitute one complicated interdependent transaction, the intent of the parties and the meaning of those docu-

ments must be determined from the entire transaction and not simply from isolated portions of a particular document. *Norcomo Corp. v. Franchi Const. Co., Inc.,* 587 S.W.2d 311, 317[7] (Mo.App.1979). Here, we must also keep in mind that the contract in question is a guaranty. The liability of a guarantor is limited by the specific terms of the contract, and the guarantor is entitled to strict construction of his obligation in his favor. *Kirkland v. Todd,* 856 S.W.2d 936, 939[2] (Mo.App.S.D.1993).

Under the original agreement, Bruce undertook three obligations: paying $620,000 of the outstanding principal on Central's loan, paying the interest on $620,000 of the principal, and paying the "Additional Interest," which at the time of default was set at $300,-000. Under the original agreement, these first two obligations terminated if the outstanding principal on Central's loan fell below $2,480,000. The third obligation terminated if it was paid in full.

The conditions by which Bruce's obligations terminated under the original agreement remained in effect after the agreement was modified. Moreover, the parties agreed, under the amended guarantee, that Bruce would have to fulfill his obligations after the sale of the property only *"if owed in accordance with the terms of the guaranty agreement."* This language clearly establishes the parties' intent that Bruce's obligations would terminate in the manner originally set forth in their initial agreement.

In its own pleadings, defendant admits that the deficiency on Central's loan after sale of the Shopping Center was $1,737,-943.87. This is obviously less than the $2,480,000 termination point necessary to release Bruce from his guaranty. Furthermore, once the proceeds of the Shopping Center sale are applied to the outstanding balance of Central's indebtedness in accordance with the manner prescribed by the Guaranty Amendment and the Agreement For Deed In Lieu Of Foreclosure—interest first, then taxes, mechanic's lien and principal—Bruce's obligation to pay the "additional interest" also terminates. By the language of the agreements, this would be the first amount to which the sale proceeds were applied. Unless we ignore the language in the amended agreement which provided that Bruce would have to fulfill his obligations only if owed under the terms of the original agreement, we must conclude that Bruce was not obligated under his guaranty.

Defendant argues that Bruce's obligation was set as of the date on which the promissory note matured. Defendant maintains that, as of the date of maturity, the outstanding balance on the loan was greater than $2,480,-000. This induced Bruce's obligation.

However, Bruce's obligation was not set and frozen at the time the promissory note matured. While Bruce may have been obligated under the original guaranty agreement, the parties clearly modified the agreement. The defendant agreed not to seek any remedies it might have under the original agreement in exchange for Bruce's consent to the transfer of deed in lieu of foreclosure. The defendant also agreed to make Bruce's obligation subject to the sale of property and application of the proceeds toward Central's indebtedness. Defendant's interpretation would have us ignore the plain language of the amended guaranty agreement. It states that Bruce must fulfill his obligation only *"if owed in accordance with the terms of the [original] guaranty agreement."* Under the original guaranty agreement, Bruce's obligations terminated where the outstanding balance on the principal fell below $2.48 million dollars and the additional interest was paid.

Defendant interprets the amended guaranty agreement as if it revived and sustained Bruce's original obligation but did not also revive and sustain the original limitations on that obligation. The agreements read together do not support such a conclusion.

The trial court erroneously applied the law. We reverse and remand so that the trial court may enter judgment in favor of Bruce on his action for declaratory judgment and against the defendant on its counterclaim.

Reversed and remanded with directions.

AHRENS, P.J., and CRAHAN, J., concur.