**Michael J. CHEHVAL, M.D.,**
**Plaintiff–Respondent,**

v.

**ST. JOHN'S MERCY MEDICAL**
**CENTER, Defendant–**
**Appellant.**

No. 72287.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 4, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 8, 1998.

Gary P. Paul, Brinker & Doyen, St. Louis, for appellant.

Morris E. Stokes, Morris E. Stokes, P.C., St. Louis, for respondent.

HOFF, Judge.

St. John's Mercy Medical Center (Medical Center) appeals from the trial court's "Judgement, Order and Decree" (Judgment) entered in favor of Michael J. Chehval, M.D.[1] (Physician) in Physician's declaratory judgment action focusing on a contractual indemnity provision. The trial court's Judgment, which resolved cross-motions for summary judgment, requires Medical Center to pay all costs and to "defend, indemnify, and hold harmless" Physician in a separate wrongful death action[2] in which Physician is a defendant. We affirm because the parties' agreement clearly and unequivocally expresses an intent that Medical Center defend, indemnify, and hold harmless Physician for sums he is required to pay for personal injuries arising out of his own negligence in his rendering of or failure to render professional services to patients of two Medical Center clinics.

Summary judgment is proper to resolve claims interpreting a contractual indemnification provision. *RJF Int'l Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366, 371 (Mo. App. E.D.1994). When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *Combined Communications Corp. v. City of Bridgeton*, 939 S.W.2d 460, 462 (Mo. App. E.D.1996), citing *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In essence, our review is *de novo* and the key is the undisputed right to judgment as a matter of law. *Id.* at 462–63.

The undisputed facts disclose the following. In 1993 Physician and Medical Center entered into a written agreement regarding Physician's professional services (Agreement). In relevant part, that Agreement addressed Physician's responsibilities as Chief of Staff at the Medical Center, Chairman of the Medical Center's Division of Genito–Urinary Surgery, member of the Medical Center's Medical Staff, and physician at the Medical Center's clinics. Under the heading *Clinic and Charity Patients* the Agreement states in full

> Physician will provide professional consultative services to patients in the J.F.K. and Meacham Park Clinics at the Medical Center. Physician agrees that billings and collections for these clinic patients will become part of the Medical Education and Research Institute. Physician shall also provide professional consultative services for charity patients as required in the Medical Staff Bylaws.

Paragraph 7.1 at page 4 of the Agreement. By paragraphs 6.1 and 6.2 of the Agreement, Physician is required to "restrict his private practice of medicine to a level that will not interfere with Physician carrying out the primary responsibilities as outlined in this

1. Dr. Chehval's first name is spelled "Micheal" throughout the agreement that is the focus of this lawsuit and spelled "Michael" in the petition that initiated this lawsuit.

2. In its Judgment the trial court identified the wrongful death action as *"Moeller v. St. Johns*, et al # 670115."* That lawsuit is being pursued by

Michael Moeller for the death of his wife, Sharon Moeller, while she was under Physician's care. Physician named Michael Moeller as a defendant in this declaratory judgment action; however, Michael Moeller is not a party on appeal from the Judgment entered by the trial court in this case.

Agreement" and to "restrict his private practice of medicine to the Medical Center." Pages 3–4 of the Agreement. The Agreement addresses the issue of Physician's potential liability for professional services as follows:

13. *PROFESSIONAL LIABILITY INSURANCE*

13.1 Medical Center hereby agrees to defend, indemnify and hold harmless Physician for all sums, including defense costs, which Physician shall become legally obligated to pay as damages because of injury to any person arising out of the rendering of or failure to render the professional services and obligations, including clinical duties, which are the subject of and which are described in this Agreement.

13.2 Physician hereby agrees to maintain a minimum level of professional liability coverage of Five Hundred Thousand ($500,000) dollars per occurrence, Five Hundred Thousand ($500,000) dollars annual aggregate, or at such limits as required by the laws of the State of Missouri as time to time revised, for any private practice activities or other rendering of professional services not included within the scope of this Agreement.

Page 6 of the Agreement.

Sharon Moeller was a clinic patient of Physician when she died on May 24, 1994. Sharon Moeller's husband, Michael Moeller, sued Medical Center and Physician in a wrongful death action alleging his wife's death resulted from their negligence and carelessness in the conduct and monitoring of surgery by Physician.

Physician then filed this separate declaratory judgment action against Medical Center.[3] In his petition, Physician alleged he unsuccessfully asked Medical Center, pursuant to their Agreement, to defend Physician and to indemnify him for any loss, cost, expense or obligation incurred in the wrong-

ful death action. Physician and Medical Center filed cross-motions for summary judgment.[4] In resolving the cross-motions for summary judgment, the trial court found no genuine issues of material fact, summary judgment was appropriate, Sharon Moeller was a clinic patient, and "as such ... the agreement of the parties requires [Medical Center] to defend, indemnify, hold harmless, and pay all defense costs in *Moeller v. St. Johns,* et al # 670115."

Medical Center concedes the basic facts are not in dispute. It urges, however, the trial court erroneously applied the law to the facts because the language of the Agreement does not clearly and unequivocally express the intent to indemnify Physician for his own negligent acts. Medical Center also argues the Agreement required Physician to maintain professional liability insurance of $500,-000 and "[a] fair reading of the agreement contemplated instances in which Physician would be directly sued for his own professional negligence." Medical Center's arguments are not persuasive.

■ One party may agree to indemnify a second party for loss resulting in whole or in part from the second party's own negligence; but such intention must be expressed in clear and unequivocal terms. *Missouri Dist. Tel. Co. v. Southwestern Bell Tel. Co.,* 338 Mo. 692, 93 S.W.2d 19, 27–28 (1935). Broad and general indemnification language is alone insufficient to provide such indemnification. *See, e.g., Howe v. Lever Bros. Co.,* 851 S.W.2d 769 (Mo.App. E.D.1993). There is, however, no special wording required. *See RJF Int'l Corp.,* 880 S.W.2d at 371 (interpreting non-explicit indemnification language as providing indemnification "irrelevant of fault").

■ Rules applicable to the construction of contracts apply generally to indemnity agreements. *Denny's Inc. v. Avesta Enters., Ltd.,* 884 S.W.2d 281, 290 (Mo.App. W.D.

---

3. As noted earlier, Physician also pursued this declaratory judgment action against a second defendant, Michael Moeller, who is not a party to this appeal.

4. Medical Center actually filed two motions to dismiss or for summary judgment, one in August 1996 and one in December 1996. Physician filed

a motion for summary judgment. The trial court's Judgment expressly considers only the "cross-motions for summary judgement." The record before us does not contain an indication of how the trial court resolved Medical Center's motions to dismiss.

1994). When a contract uses plain and unequivocal language it must be enforced as written. *Lake Cable, Inc. v. Trittler,* 914 S.W.2d 431, 436 (Mo.App. E.D.1996). To ascertain the intent of the parties to an unambiguous contract, we give the language used its natural, ordinary, and common sense meaning, and consider the entire contract, along with its object, nature, and purpose. *Central City Ltd. Partnership v. United Postal Sav. Ass'n,* 903 S.W.2d 179, 182 (Mo. App. E.D.1995). An ambiguity does not exist merely because the parties dispute the meaning of the contract. *Id.* Rather, a contract is ambiguous when the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Id.*

■ Looking at the Agreement as a whole, we find its purpose is to delineate an employment relationship between Medical Center and Physician. Importantly, the Agreement expressly distinguishes between Physician's professional obligations and services at the Medical Center's clinics and his other professional obligations and services for the Medical Center. The Agreement also makes explicit distinctions between Physician engaging in professional services within the scope of the Agreement and Physician engaging in such services outside the scope of the Agreement.

With respect to Physician's clinical duties, the Agreement required Physician to see and treat patients at two specified clinics of the Medical Center and expressly denied any payment to Physician as compensation for such work. Instead, Medical Center required that payment for Physician's required clinic services be contributed to a specific institute. The Agreement also expressly recognized Physician may engage in professional services outside the scope of the Agreement by noting Physician's private practice must not interfere with his services under the Agreement and was restricted to the Medical Center.

This distinction between the rendering of services within the scope of the Agreement and the rendering of services beyond the scope of the Agreement is reiterated by the manner in which Physician's potential liability for providing professional services is addressed in Paragraph 13.1 of the Agreement:

> Medical Center hereby agrees to defend, indemnify and hold harmless Physician for all sums, including defense costs, which Physician shall become legally obligated to pay as damages because of injury to any person arising out of the rendering of or failure to render the professional services and obligations, *including clinical duties,* which are the subject of and which are described in this Agreement.

(emphasis added.) In the next paragraph of the Agreement, Physician is required to maintain a minimum level of professional liability coverage for "any private practice activities or other ... professional services *not included within the scope of this Agreement* " (emphasis added).

Paragraph 13.1 of the parties' Agreement clearly indicates Medical Center's intent to indemnify Physician for any sum he is obligated to pay for injury to any person arising out of his acts or failure to act, while carrying out "clinical duties" that are the subject of the Agreement. The Agreement clearly and unambiguously requires Physician to provide professional services to patients at two clinics. The Agreement does not set forth any obligations of the Medical Center with regard to the two identified clinics. Therefore, the professional services Physician renders to patients at the two clinics are the "clinical duties" referenced in the Agreement's indemnification provision.

There is no dispute that the separate wrongful death action seeks damages from Physician for his alleged acts or failure to act in his provision of professional services to a patient at one of the Medical Center's clinics identified in the Agreement. Furthermore, there is no dispute that the services of Physician which are the focus of the wrongful death action are within the services of Physician required by the Agreement. Under the circumstances, the Agreement's indemnification provision clearly and unequivocally encompasses the conduct of Physician that is challenged in the separate wrongful death action.

Nevertheless, Medical Center argues it is not· obligated to indemnify Physician for his own negligent acts because such indemnification must be set forth explicitly in the indemnification provision and an express statement of such coverage is not present here. In support of this position, Medical Center cites *Howe, supra; Pilla v. Tom–Boy, Inc.,* 756 S.W.2d 638 (Mo.App. E.D.1988); and *Bonenberger v. Associated Dry Goods Co.,* 738 S.W.2d 598 (Mo.App. E.D.1987). We find these cases inapposite.

In *Howe,* this Court found the relevant indemnification provision did not clearly express an intent to indemnify against the indemnified party's own negligent acts. *Howe,* 851 S.W.2d at 772–73. Corrigan Company Mechanical Contractors (Corrigan) contracted with a general contractor, Fru–Con Construction Company (Fru–Con), to do some work on a construction project and then subcontracted some of its work to Ratican Insulation Company (Ratican), who subcontracted some of its work to Insulation Abatement Services, Inc. (Insulation). One of Insulation's employees was injured falling from a scaffolding. *Id.* at 771. He sued the property owner (Lever Brothers), the general contractor (Fru–Con), and Corrigan, who added Ratican as a party to the lawsuit. *Id.* With all defendants' consent, Lever Brothers settled with the injured employee. *Id.* All defendants contributed equally to the settlement amount and permitted the trial court to determine their contractual indemnity claims. *Id.* In relevant part, the trial court concluded Corrigan was not entitled to indemnification from Ratican based upon the following indemnification provision:

[Ratican] hereby assumes entire responsibility and liability for any and all damage and injury of any kind or nature whatsoever to all persons, whether employees or otherwise, and to all property, growing out of, or resulting from the labor or material or both used in the performance of this contract or occurring in connection therewith, and agrees to indemnify and save harmless [Corrigan and/or Lever brothers] and their agents, servants and employees from and against any and all loss, expense, including legal fees and disbursements, damage or injury growing out of or result-

ing therefrom, or occurring in connection therewith. . . .

*Id.* at 773. In affirming the trial court's judgment, this Court stated, in relevant part, "[t]he indemnity provision Ratican gave Corrigan is silent concerning indemnity for injuries caused by Corrigan's negligence" and does not either "expressly [ ]or unequivocally" evince Ratican's agreement to indemnify Corrigan "for the negligence of any party other than [Ratican]." *Id.*

In *Pilla* we found broad, general language in an indemnification provision of a lease did not satisfy the requirement that "an intention to indemnify [the Pillas] for their negligence, [be] clearly and unequivocally expressed." *Pilla,* 756 S.W.2d at 641. The Pillas owned a building adjacent to a sidewalk on which a pedestrian fell and sustained injuries. *Id.* at 639. The Pillas (Lessors) leased the building to Tom–Boy, Inc. (Lessee), who sub-leased the premises to Gewinner's Tom–Boy Supermarket, Inc. (Supermarket). *Id.* The pedestrian filed suit against Supermarket and the Pillas were added as defendants. *Id.* The Pillas unsuccessfully demanded indemnification from Lessee on the basis of the following lease provision:

Lessee agrees to save the Lessor[s] . . . harmless from any and all damages and damage suits in connection with the liability for any and all injuries or damages suffered by any employee of said Lessee, or Lessee's agents, customers, guests or other persons whomsoever, caused to them or their persons or property in, on, or about or adjacent to said premises.

*Id.*

*Howe* and *Pilla* are distinguishable from the case now before this Court because nothing in the language of the relevant indemnification provisions clearly encompassed the conduct at issue in those cases; the provisions were silent on the issue of indemnity for the indemnified party's own negligent acts. Here, on the other hand, the indemnification provision expressly encompasses liability arising out of "clinical duties" set forth in the Agreement, and only the Physician has "clinical duties" under the terms of the Agreement. Therefore, it is clear Medical

Center must indemnify Physician for sums he must pay for injuries arising out of any act or failure to act within Physician's clinical duties.

In *Bonenberger* the indemnification provision stated in relevant part "[Lessee] agrees to defend [Lessor] ... from any and all claims ... arising from *[Lessee's] operation of its business.*" *Bonenberger*, 738 S.W.2d at 601 n. 2. In light of the emphasized language, and a comparison of the indemnification language with such language in other Missouri cases, we determined this provision did not "unequivocally mean that [Lessee] agreed to indemnify [Lessor] if [Lessor] is established to have contributed to ... injuries through its own negligence." *Id.* at 601. Because that provision, unlike the provision at issue here, expressly provides indemnification for the indemnifying party's conduct, *Bonenberger* is not helpful to Medical Center.

Due to similar distinctive language in the relevant indemnification provisions at issue in *Kansas City Power & Light Co. v. Federal Constr. Corp.*, 351 S.W.2d 741 (Mo.1961); *Missouri Dist. Tel. Co., supra;* and *Allison v. Barnes Hosp.*, 873 S.W.2d 288 (Mo.App. E.D.1994), Medical Center's reliance on those cases is misplaced. In *Kansas City Power & Light Co.*, the Missouri Supreme Court construed an indemnification provision stating Contractor was liable "for the *safety* of the work to be performed by *him* " as "referring solely to risks created by the contractor's own acts." *Kansas City Power & Light Co.*, 351 S.W.2d at 745. The supreme court also construed a provision stating Contractor "shall indemnify * * * [another entity] * * * from all suits * * * for * * * damages or injuries received * * * by any party *by or from the Contractor, his agents,* * * * in the performance of the work" as "amply reinforc[ing] the view that the whole paragraph speaks only" of indemnity from injuries or loss arising from Contractor's own conduct. *Id.* Next, the state supreme court interpreted a provision that Contractor "shall indemnify [the other entity] * * * from all loss * * * *resulting from or arising out of the acts or omissions of the Contractor, or any subcontractor* * * * resulting in injury to * * * the person or property (1) of the contractor's employees, and (2) of all other persons." *Id.* at 746. The supreme court found that, in

this provision, there was "a clear inference of a requirement of *fault* on the part of [the Contractor], either by acts of commission or omission." *Id.*

In *Missouri District Telegraph Company*, the Missouri Supreme Court construed an indemnification provision stating lessee undertook to indemnify lessor, in relevant part,

> from and against any and all * * * claims, suits, *judgments for damages or injuries arising to persons or property or in any manner by reason of the use or maintenance by the lessee of plant facilities hereunder,* or *by reason of the acts or negligence of the agents, or employees of lessee while engaged in the work of placing, maintaining, renewing or removing plant facilities hereunder.*

*Missouri Dist. Tel. Co.*, 93 S.W.2d at 26 (some emphasis added; some emphasis in original). The court found lessee did not indemnify lessor when lessor's negligence is the "primary or a contributing cause of the loss or damages" because the language "is phrased in general terms" and "is very broad and indefinite." *Id.* at 27–28.

In *Allison* this Court found a party (Contractor) to an Elevator Maintenance Agreement was not required to defend the building owner in a negligence action for injuries sustained by a visitor to the building. *Allison*, 873 S.W.2d at 292–93. The indemnity provision stated in relevant part:

> Contractor shall indemnify and hold harmless the owner for damages to property or persons, including death, directly *caused in whole or in part by the negligent acts or omissions of the contractor,* its employees, servants or agents; contractor will defend any and all suits which may be brought against the owner for damages to property or persons, including death, directly *caused in whole or in part by the negligent acts or omissions of the contractor,* its employees, servants or agents.

*Allison*, 873 S.W.2d at 292 (some emphasis added; some emphasis in original). We found the provision did not unequivocally provide indemnification or defense by Contractor for liability arising from the building owner's own negligence. *Id.* at 292–93.

In these cases, the relevant indemnification provision(s) expressly indemnified a party

from liability for the indemnifying party's own conduct. In the instant case, however, the relevant indemnification provision is not expressly limited to indemnification of the Physician for sums he is legally obligated to pay as the result of any act or failure to act by the Medical Center (the indemnifying party). Instead, the indemnity provision here explicitly encompasses "clinical duties," which by the terms of the Agreement, are only duties of Physician. Thus, the indemnity provision clearly encompasses liability of the Physician for sums relating to injuries arising out of his professional services at the two identified clinics of the Medical Center.

Under the circumstances presented here, we find the language used in paragraph 13.1 of the parties' Agreement clearly and unequivocally requires Medical Center to defend, indemnify, hold harmless, and pay the defense costs incurred by Physician with respect to the *Moeller* wrongful death action.

The Agreement further requires Physician to maintain professional liability coverage for any professional services beyond the scope of the Agreement. Medical Center argues this requirement reflects the parties' understanding Physician would be sued directly for his own professional negligence, and therefore the indemnity clause is not all encompassing. Such an argument ignores the language of the Agreement. The language of the Agreement very clearly requires Physician to carry professional liability insurance "for any private practice activities or other rendering of professional services not included with the scope of th[e] Agreement." No provision of the Agreement requires Physician's own professional liability insurance to cover his professional duties at the Medical Center's two clinics. In accordance with the express terms of the Agreement, those duties include Physician's professional services to the clinics' patients, services which are the focus of the separate wrongful death action. Therefore, the Agreement's requirement that Physician have certain professional liability insurance cannot be construed as limiting

Medical Center's indemnification obligation under the circumstances of this case.

Because we interpret the language of the indemnity provision at paragraph 13.1 of the parties' Agreement to require Medical Center to defend, indemnify and hold harmless Physician, regardless of fault,[5] for sums Physician must pay for injuries arising out of Physician's acts or failure to act in the providing of professional services to patients at Medical Center's two specified clinics, Medical Center's point is denied. To clarify the extent of this opinion, we specifically note we are not interpreting the indemnification provision of paragraph 13.1 in light of any other services by Physician or any other circumstances that may arise throughout the relationship between Medical Center and Physician.

The Judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and SIMON, J., concur.

---

5. *See RJF Int'l Corp.*, 880 S.W.2d at 369, 371 (upholding the entry of summary judgment upon interpreting a provision that the indemnifying party "assumes and indemnifies and holds harmless [the indemnified party] from and against ... [a]ll liabilities and obligations arising from [certain specified conduct] on or after" a specified date as providing indemnification "irrelevant of fault" even though the acts occurred prior to the specified date).